**Sandra J. DREW, Plaintiff-Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.**

**No. 72–3003.**

United States Court of Appeals, Fifth Circuit.

June 4, 1973.

Rehearing and Rehearing En Banc Denied July 12, 1973.

------◆------

Clayton Sinclair, Jr., Lenwood A. Jackson, Atlanta, Ga., Robert A. Penney, Boston, Mass., for plaintiff-appellant.

Lutz Alexander Prager, EEOC, Washington, D. C., Joseph Ray Terry, Regional Atty., EEOC, Atlanta, Ga., amicus curiae.

Kalvin M. Grove, S. Richard Pincus, Chicago, Ill., Melburne D. McLendon, Atlanta, Ga., for defendant-appellee.

Before TUTTLE, THORNBERRY and DYER, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by Sandra Drew, a white female [1] employee of Liberty Mutual Insurance Company seeking a preliminary injunction to prevent her employer from discharging her for what she alleged to be the filing of a complaint of discrimination on account of sex by her employer.

The complaint which was filed on April 19, 1972, alleged in effect: (a) That Liberty Mutual, Drew's employer discriminated against female employees in the terms and conditions of employ-

[1]. We make this reference to the color and sex of the individual involved solely because it is essential in order to pinpoint the precise nature of the alleged discrimination which was the subject of this lawsuit.

ment in violation of Title VII of the Civil Rights Act of 1964, (b) That on April 6, 1972, she had filed a charge of discrimination with the Equal Employment Opportunity Commission, outlining Liberty Mutual's violations of Title VII, (c) That on April 7, 1972, the day after the filing of the charge, she had been fired, and (d) That her discharge was in retaliation for having filed her charge with the Commission and for opposing practices prohibited by Title VII. She alleged that this violated subsection 704(a) of Title VII.[2]

Ms. Drew's complaint sought an order temporarily reinstating her to the position she had held, awarding pay for the period she had been unemployed, prohibiting future reprisal. It sought to obtain temporary relief to preserve the status quo pending the Commission's administrative disposition of her charges.

On May 2, Liberty Mutual moved to dismiss the complaint, primarily on the grounds that it failed to state a claim and, secondarily, on grounds that an indispensable party, the Commission, had not been joined. The trial court held a hearing on the motion to dismiss on May 4, and, according to the transcript of the proceedings, expressed a strong doubt as to the right of the individual employee to maintain such an action in light of the amendment to Title VII made effective in 1972, which amendment, for the first time, provided that in exceptional circumstances, following the filing of a complaint, the Commission "may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge."

Nevertheless the court did not dismiss the complaint but allowed the plaintiff's counsel additional time to file an amended complaint. One amendment was filed May 10, 1972, alleging a conspiracy in violation of one of the Civil War Civil Rights Acts, 42 U.S.C. § 1985(3), a ground for relief that has now been abandoned. A further amendment was filed May 23, 1972, which alleged that the Commission had, at Drew's request, issued a "Notice of Right to Sue Within 90 Days" on May 18, 1972.

In the meantime, on May 12, 1972, the Commission filed a complaint of its own alleging substantially the same fact as contained in the Drew complaint. It also sought the same injunctive relief. It must be noted that this was not a suit for final relief as provided for under Section 706(f)(1) of the Act. It was filed under the emergency provisions of Section 706(f)(2) seeking temporary relief pending the Commission's action on the original charge.

On May 30–31, 1972, a hearing was held, as stated by the trial court, on the suit filed by the Commission, although Drew's counsel was permitted to participate.

At this hearing the trial court found sufficient evidence to conclude that the Drew discharge had been retaliatory, in violation of subsection 704(a) and to warrant the granting of injunctive relief. In doing so, the court specifically found that the plaintiff had suffered irreparable harm. The court ordered Liberty Mutual to reinstate Ms. Drew at her former position with back pay. This judgment has recently been affirmed by this court. Equal Employment Opportunity Commission v. Liber-

---

2. This section provides as follows:
    "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this title."

ty Mutual Insurance Co., 475 F.2d 579 (5th Cir. 1973).

Subsequently, the trial court dismissed the Drew complaint and awarded costs to the defendant. In its order the court held that Title VII did not confer jurisdiction to a private party to maintain a suit for injunctive relief, or any other relief, prior to the expiration of 180 days from submission of a charge to the Commission. In addition the court held that it lacked jurisdiction under its equitable powers because "the equity powers which the plaintiff and the EEOC assert that the court should exercise must be employed, if at all, only when there is no statutory basis for granting relief and when the relief sought cannot be obtained through any other forum or procedure." The court concluded that since the Commission had filed suit it was not necessary for Ms. Drew to invoke the extraordinary equity powers of the court in order to obtain the relief sought. The court held, therefore, that her action was "superfluous." It therefore dismissed the case "for lack of subject matter jurisdiction."

The court then made the following statement

"However it is the opinion of the court that the plaintiff should be allowed to intervene in the case of EEOC v. Liberty Mutual Life Insurance Co., Civil Action No. 16590. *Up to the present time, plaintiff's interests have been adequately preserved by the existence of her individual action,* now dismissed by virtue of this order. In the future her interests can best be protected by intervention. Accordingly, *she is directed to make application for intervention pursuant to Rule 24, Fed.R.Civ.P.*" (Emphasis added).

This wound up the matter below, except that costs were granted to the defendant and no attorney's fees for the plaintiff's counsel were allowed.

■ As we have pointed out, Ms. Drew has, under an order of the court, been reinstated to her position, pending further proceedings before the Commission. On the basis of this fact, the defendant contends that the case before us is now moot. We think the case is not moot, because the plaintiff below has been cast for court costs and, in spite of what the record in the trial court shows to have been a very substantial amount of effort expended on behalf of their individual client, who ultimately prevailed, at least by their joint efforts with counsel for the EEOC, the trial court did not even consider the propriety of awarding counsel fees as is authorized under the statute.

We are satisfied that if we should conclude that the Drew complaint, at the time it was filed, and for a period of time during which counsel performed substantial service for her, was properly in the district court, it would be our duty to remand to the trial court either for reinstatement of the suit, or for relieving the plaintiff of her obligation to pay for the costs of the action. The trial court would then also consider the award of attorney's fees for service performed for Ms. Drew.

The basic question decided by the trial court, and which we now hold is still a viable issue, is whether, when Congress enacted the 1972 amendments to the statute which for the first time gave the EEOC the right to file suit both for the enforcement of the rights of the employee and also to seek temporary relief in a hardship case, it made such provision the exclusive means by which a person in Ms. Drew's position could be protected from irreparable damage to herself.

■ We conclude that in the limited class of cases, such as the present, in which irreparable injury is shown and likelihood of ultimate success has been established, (here this has been determined by the trial court), the individual employee may bring her own suit to maintain the status quo pending the action of the Commission on the basic charge of discrimination.

Our reasoning derives from the fact that, prior to the 1972 amendment, it is

clear that a victim of such forbidden conduct as was here alleged had a clear right to seek equitable relief without having to await the convenience of the EEOC. The 1964 Act gave no power to the EEOC to bring such an action. However, the right to be free from such discriminatory conduct was expressly spelled out in the Act.[3] Thus, the court would have jurisdiction to fashion an equitable remedy to vindicate the right. See e. g., Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970).

The situation in which Ms. Drew found herself would have been equated to that of Ms. Sanders in the *Dobbs* case. Ms. Sanders sued under 42 U.S.C.A. § 1981,[4] one of the 1866 Civil Rights Acts. This Act, as will be seen, did not prescribe any remedy. It merely created a right in every person to make and enforce contracts "as is enjoyed by white citizens." Yet in *Dobbs* we sustained the right of Ms. Sanders to bring an action in equity in the district court. In doing so, we relied upon the Supreme Court decision in Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. The Supreme Court said:

"The fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an ef-

fective equitable remedy. See, e. g. Texas & N.O.R. Co. v. Railway Clerks, 281 U.S. 548, 568–570, 50 S.Ct. 427, 433, 74 L.Ed. 1034; Deckert v. Independence Corp., 311 U.S. 282, 288, 61 S.Ct. 229, 333, 85 L.Ed. 189; United States v. Republic Steel Corp., 362 U.S. 482, 491–492, 80 S.Ct. 884, 889–890, 4 L.Ed.2d 903; J. I. Case Co. v. Borak, 377 U.S. 426, 432–435, 84 S.Ct. 1555, 1559–1561, 12 L.Ed.2d 423; Cf. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Griffin v. School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256."

We have no doubt, therefore, that, prior to the amendment of 1972, Ms. Drew could have filed the suit for an injunction pending the consideration to be given to her charges by the EEOC.

Moreover, it must be remembered that what, and all, the plaintiff sought here was temporary relief to prevent irreparable injury while the Commission carried on its function of negotiating and conciliating.[5] As one commentator said concerning such an action prior to the amendment:

"... It would seem that if the court has power to grant a preliminary injunction when the final decision-making authority is in an administrative body, a fortiori it should have the power to award such relief

---

3. 42 U.S.C.A. § 2000e–3(a):
   "It shall be an unlawful employment practice for an employer:
   . . . to discriminate against any individual . . . because he opposed any practice made an unlawful practice by this title, or because he made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this title."

4. Section 1981 provides:
   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to

like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

5. It must be remembered that this is not an action brought by Ms. Drew for a final adjudication of her right to be protected against the alleged discriminatory conduct of the defendant. That matter is being considered by the Commission in the usual course. She normally would not be permitted to file a suit on the merits unless the Commission had been unable for a period of 180 days to effect conciliation. The 180-day provision, of course, does not apply here, because the action brought by Ms. Drew is merely one to seek temporary relief *pending the action of the Commission.* It is similar to the action which the Commission now has the right to bring under Section 706(f)(2).

when it must only defer to the agency for a period of attempted conciliation and the final decisional authority rests with the court. Indeed, such an injunction might be essential to preserve the court's ability to later order meaningful relief." Note, Developments In The Law—Employment Discrimination in Title VII of the Civil Rights Act of 1964, 84 Harvard Law Review, 1109, 1257 (1971).

The case of Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969), is also instructive in its holding that a right of action can be fashioned by a federal court when the beneficiary of a federal law contends he is deprived of its benefits.

The trial court, however, without specifically considering the question whether Ms. Drew might have had a right to bring such an action prior to the adoption of the amendment, concluded that the adoption of the amendment by Congress (by which, for the first time, the EEOC was given the right to file an enforcement proceeding in the court and also to "bring an action for appropriate temporary or preliminary relief pending final disposition of such charge" when the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of the Act) made such provision the exclusive remedy available for the protection of an employee like Ms. Drew.

We find no basis for such a construction of the 1972 Act. The original Senate version of the proposed amendment to the Act and House version differed materially. At all stages in the proceedings strong minority reports attacked the authority finally given for the Commission to file enforcement proceedings in court and to take the action which we have just described pending a final decision by the EEOC. The House bill as passed provided that charges under Title VII are the exclusive remedy for unlawful employment practices. In Conference, the House receded. U. S. Code

Congressional and Administrative News 1972, p. 2181. This would be a strong indication of the intent of Congress *not* to exclude court action of the kind previously available.

Included in the legislative history is the unanimous comment of majority and minority committee reports to the effect that the Commission is simply overwhelmed with complaints. In the House Minority Committee report is a quotation of Chairman Brown that EEOC's backlog "now means an average delay of 18 months to 2 years before the Commission can complete action on a complaint." U. S. Code Congressional and Administrative News 1972, p. 2170.

Under the theory advanced by Liberty Mutual, and adopted by the trial court, Ms. Drew would have to be fortunate enough for her complaint with EEOC so to divert the attention of the staff from its overwhelming burden of cases to distinguish it as one which demanded immediate attention, resulting in the preparation and filing of a suit by staff attorneys pending the usual course of processing the complaint before she would ever be able to act on her own to seek an end to the irreparable damage she was suffering. If she had not been fortunate enough to obtain counsel willing to file the complaint for her one can only speculate as to the likelihood that the EEOC would have considered her case as having the merit which the trial court found it to contain. We should not lightly assume that Congress sought to do away with the chance that private litigants might in this manner alleviate the burden on EEOC members and staff in the rare situation when the likelihood of success and the need for immediate assistance could attract competent counsel to act.

We think that none of the criteria by which courts generally consider that an act of Congress, silent on the subject, is held to have impliedly destroyed an existing right of action are present here. In the *Dobbs* case it was argued that the enactment of Title VII of the Civil

Rights Act of 1964 preempted the general remedial language of 42 U.S.C.A. § 1981; that is to say that the enactment of the statute we are concerned with prohibiting discrimination in employment on account of race and sex put an end to the right of a litigant to rely on Section 1981 as a basis for bringing a suit alleging a denial of the opportunity to be employed on account of race. We answered this contention by saying:

"Since there is no language in Title VII that can remotely be construed as directly repealing § 1981, the only means of repeal through preemption would be by implication. *Repeals by implication, however, are not favored* and 'the intention of the legislature must be clear and manifest . . .'" Citing Posadas v. National City Bank, 296 U.S. 497, 503, 56 S. Ct. 349, 80 L.Ed. 351.

We also pointed to the case of Waters v. Wisconsin Steel Works, etc., 427 F.2d 476 (7th Cir., 1970), in which it was held that:

"a right to sue under section 1981 for 'private' racial discrimination in employment existed prior to 1964. By enacting Title VII of the 1964 Civil Rights Act, Congress did not repeal this right to sue." 427 F.2d at 481.

In *Dobbs* we also stated that:

"This interpretation also finds support by analogy in Jones v. Alfred H. Mayer Co., where the court ruled that Title VIII of the Civil Rights Act of 1968 did not repeal § 1982 by implication. Moreover, in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 405, 24 L.Ed.2d 386, the Court stated:

'We noted in Jones v. Alfred H. Mayer Co. that the Fair Housing Act of 1968, 82 Stat. 81, in no way impaired the sanction of § 1982. 392 U.S. at 413–417, 88 S.Ct. 2186, at 2189–2192. What we said there is adequate to dispose of the suggestion that the Public Accommodations provision of the Civil Rights Act of 1964, 78 Stat. 243, in some way supersedes the provisions of the 1866 Act. For the hierarchy of administrative machinery provided for the 1964 Act is not at war with the principles embodied in § 1982.'"

Moreover, it is clearly the policy of the legislation to encourage the use of privately employed counsel as private attorneys-general to aid in the enforcement of this statute. This is made evident by the provision in Section 2000e–5 for the appointment of counsel in the event that the Commission dismisses a charge or if, after 180 days, the Commission has not filed a civil action.

As to the suggestion contained in the written opinion of the trial court that a chaotic situation would result if private litigants in the position in which Ms. Drew found herself upon her summary dismissal because of her having filed a complaint with the EEOC were permitted to seek temporary injunctive relief, we call attention to what this court has previously noted in H. Kessler & Co. v. EEOC et al., 472 F.2d 1147 (5th Cir. 1973). We there said:

"The courts of this circuit have previously found that competent lawyers are not eager to enter the fray in behalf of a person who is seeking redress under Title VII. This is true even though provision is made for payment of attorney's fees in the event of success. In the case of Petete v. Consolidated Freightways, 313 F.Supp. 1271 (D.C.N.D., Tex., 1970), for instance, the court found that '[f]urther complicating plaintiff's problem has been the reluctance of the attorneys she has approached to undertake the specific and complex challenges of a Title VII law suit which are not common to more frequently litigated areas of the law.' See also, Edmonds v. E. I. DuPont de Nemours & Co., 315 F.Supp. 523, 524 (D.C.Kansas, 1970); Sanders v. Russell, 401 F.2d 241 (CA 5, 1968)."

We conclude that there is no apparent set of circumstances that would cause us

to construe the 1972 amendment as having impliedly destroyed the right of action which Ms. Drew would previously have had prior to its enactment. It was therefore error for the trial court to have concluded that Ms. Drew's case was subject to dismissal for failure to state a claim on which relief could be granted. It is not simple to determine what course of action should be pursued upon a remand to the trial court. As noted above Ms. Drew has been afforded the relief she sought in her law suit, by the filing of a suit a month later by EEOC seeking the same result. Nevertheless, it is clear that if the Drew case was properly in court it was improper to charge her with the costs of the trial court action and to fail to consider the request for attorney's fees. Significantly, the trial court recognized the value of the work performed by Ms. Drew's counsel when it made the comment:

"To the present time [July 12] plaintiff's interest have been adequately preserved by the existence of her individual action."

Furthermore, the court seemed to consider it necessary for her to be a party to the continuing action, because it further stated:

"She is directed to make application for intervention pursuant to Rule 24 Fed.R.Civ.P."

It appears from the trial court records that Ms. Drew has now intervened in the EEOC suit. This being the case, we conclude that this is an adequate disposition of her interests and that on remand the court consider the awarding of counsel fees to Ms. Drew to represent the value of the services performed on her behalf by counsel up until the time when the intervention was accomplished, and including services performed by them in connection with this appeal.

The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion. The order of the trial court dismissing Ms. Drew's complaint is vacated pending a further order of the court dealing with the matter of counsel fees. Following the entry of such order, the suit can be dismissed with costs awarded to the plaintiff.