528 F.2d 1208
 11 Fair Empl.Prac.Cas. 1285,
10 Empl. Prac. Dec. P 10,553
Sonja Lynn BERG, individually and on behalf of all other
female employees of the Richmond Unified School
District, Plaintiff-Appellee,
v.
RICHMOND UNIFIED SCHOOL DISTRICT et al., Defendants-Appellants.
 No. 74--1457.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 9, 1975.
 
 Arthur W. Walenta, Jr., Asst. County Counsel (argued), Martinez, Cal., for defendants-appellants.
 Mary C. Dunlap (argued), Dunlap, Davis & Williams, San Francisco, Cal., for plaintiff-appellee.
 OPINION
 Before MERRILL and KOELSCH, Circuit Judges, and SMITH,* District Judge.
 KOELSCH, Circuit Judge:
 
 
 1
 When plaintiff Berg, a school teacher employed by defendant Richmond Unified School District, became pregnant, the defendants--the School District and its officers--acting pursuant to a district policy relating solely to pregnant employees,[1] threatened to (1) require her to cease working on a date earlier than she and her physician believed necessary and (2) deny her the benefit of accumulated sick leave pay while she was not working. Thereafter, in the fifth month of her pregnancy, plaintiff filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination based on sex.
 
 
 2
 About two months later, plaintiff requested the EEOC to issue her a 'right to sue' letter.[2] She waited in vain for about a month and then commenced this class action in the district court under the purported authority of the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the fourteenth amendment to the federal constitution. At the same time, she secured a preliminary injunction staying the defendants from their threatened action. Shielded by this order, she continued to teach until the day before her child was born. Meantime, the EEOC did issue its letter, and plaintiff duly supplemented her complaint. Ultimately, the district court granted plaintiff summary judgment on the Title VII claim, certified a class, issued a permanent injunction against the defendants, and allowed plaintiff attorney's fees.[3] The appeal followed. We affirm.
 
 
 3
 Defendants' initial contention, that the district court lacked subject matter jurisdiction because no 'right to sue' letter had issued at the time of the commencement of the action, is without merit. Putting aside for a moment discussion of the district court's jurisdiction over the Title VII claim upon which permanent injunctive relief was ultimately predicated, we are clear that the district court possessed independent subject matter jurisdiction to reach the question of preliminary injunctive relief under 28 U.S.C. § 1343(3), based on plaintiff's § 1983 claim that she was deprived of her rights to due process and equal protection of the laws.[4]
 
 
 4
 Section 1343(3) grants the district courts original jurisdiction of civil actions
 
 
 5
 '(nt)o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . ..'
 
 
 6
 Because plaintiff's § 1983 claim falls within the scope of this language, 'Section 1343(3) . . . conferred jurisdiction upon the District Court to entertain the constitutional claim if it was of sufficient substance to support federal jurisdiction.' Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). See Bell v. Hood, 327 U.S. 678, 682--683, 67 S.Ct. 773, 90 L.Ed. 939 (1946); Holder v. Nelson, 514 F.2d 1091, 1092 (9th Cir. 1975).
 
 
 7
 Applying the test of Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), as further elucidated in Hagans, supra, 415 U.S. at 536--543, 94 S.Ct. 1372, we conclude that plaintiff's § 1983 due process and equal protection claims were not 'so utterly devoid of merit as to deprive the district court of its jurisdiction under § 1343.' Holder v. Nelson,supra, 514 F.2d at 1092.[5]
 
 
 8
 Moreover, it appears to us that the district court had subject matter jurisdiction under Title VII itself to reach the merits of the preliminary injunction issue. In a limited class of cases such as this one, in which there exist both a high probability of the claimant's ultimate success on the merits and the threat of irreparable injury of the sort which the Act seeks to avoid, a Title VII claimant may personally bring suit to maintain the status quo pending disposition by the EEOC of the underlying charge of discrimination. See Drew v. Liberty Mutual Insurance Co., 480 F.2d 69, 72--76 (5th Cir. 1973); Culpepper v. Reynolds Metals Company, 421 F.2d 888, 893--895 (5th Cir. 1970); Note, Developments in the Law--Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1256--1259 (1971).[6]
 
 
 9
 And finally, the later issuance of the 'right to sue' letter coupled with the filing of the supplemental complaint operated to cure any initial jurisdictional defect. Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir. 1972), cert. denied, 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973); Jones v. United Gas Improvement Corporation, 383 F.Supp. 420, 424 (E.D.Pa.1974); Dodge v. Giant Food, Inc., 3 E.P.D. P8184 (D.D.C1971), aff'd, 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973).
 
 
 10
 True, such letters have often been characterized a 'jurisdictional prerequisite' to a lawsuit under Title VII. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, we read this statutory requirement in the light of the well-established principle that procedural niceties should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits. See Jones, supra; Shaffield v. Northrop Worldwide Aircraft Services, Inc., 373 F.Supp. 937, 940 (M.D.Ala., S.D.1974); and cases cited therein. Cf. Davis v. Valley Distributing Company, 522 F.2d 827, 831--832 (9th Cir. 1975). As noted in Beverly v. Lone Star Lead Construction Corporation, 437 F.2d 1136, 1140 (5th Cir. 1971), '(t)he sole purpose of this requirement is to provide a formal notification to the claimant that his administrative remedies with the Commission have been exhausted.' Cf. Stone v. E.D.S. Federal Corporation, 351 F.Supp. 340, 343 (N.D.Cal.1972). Under the circumstances here presented--where the district court initially had independent subject matter jurisdiction and where plaintiff had requested the letter--requiring her to commence a new action would be a pointless exercise in formalism.
 
 
 11
 Turning now to the merits of the Title VII claim, we note that 42 U.S.C. § 2000e--2 broadly outlaws discrimination in employment based on sex.[7] Whether this section prohibits the district policy here under attack is of course a question of statutory interpretation, not one of constitutional analysis. Hutchison v. Lake Oswego School District No. 7, 519 F.2d 961, 964 (9th Cir. 1975); Wetzel v. Liberty Mutual Insurance Company, 511 F.2d 199, 203 (3d Cir. 1975), cert. granted, 421 U.S. 987, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).[8]
 
 
 12
 The defendants take the position that the interim maternity leave policy does not violate § 2000e--2 because the policy establishes no sex-based classification--i.e., it is applicable only to pregnant women, not all women. This contention does have a surface appeal when considered against the background of the Supreme Court's dictum in 'footnote 20' of Geduldig v. Aiello, 417 U.S. 484, 496 n. 20, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974),[9] but it is foreclosed by our recent decision in Hutchison, supra. We therefore reject it.
 
 
 13
 In Hutchison, we held that a school district's exclusion of pregnancy- or childbirth-related disabilities from sick leave coverage was a Title VII violation. In reaching that conclusion, we accorded 'great deference,' consistent with the teachings of Griggs v. Duke Power Co., 401 U.S. 424, 433--434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), to the EEOC's interpretation of Title VII as expressed in the relevant guideline promulgated by the agency.[10] Other circuits have similarly regarded and followed that guideline. See Satty v. Nashville Gas Company, 522 F.2d 850, 855, No. 75--1083 (6th Cir. 1975); Gilbert v. General Electric Company, 519 F.2d 661, 664, No. 74--1557 (4th Cir. 1975), cert. granted, 423 U.S. 822, 96 S.Ct. 36, 46 L.Ed.2d 39 (1975); Holthaus v. Compton & Sons, Inc., 514 F.2d 651, 653 (8th Cir. 1975); Communication Workers v. American Telephone and Telegraph Company, 513 F.2d 1024, 1030--1031 (2d Cir. 1975); Wetzel, supra, 511 F.2d at 206--207; Farkas v. South Western City School District, 506 F.2d 1400 (6th Cir. 1974), aff'g 8 FEP Cases 288 (S.D.Ohio 1974). See also Sale v. Waverly-Shell Rock Board of Education, 390 F.Supp. 784, 787--788 (N.D.Iowa 1975); Vineyard v. Hollister School District, 64 F.R.D. 580, 585 (N.D.Cal.1974).
 
 
 14
 Hutchison manifests the conclusion that the district policy violates Title VII not only in respect to its denial of sick leave pay during pregnancy-occasioned absences but also in respect to its compulsion of pregnancy leave in the district's discretion. The agency guideline relied on in Hutchison interprets the statute as requiring 'employment policies and practices involving matters such as the commencement and duration of leave (and) the availability of extensions . . . shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.' We are unable to say that 'application of the guideline would be inconsistent with an obvious congressional intent not to reach the employment practice in question,' see Hutchison, supra, 519 F.2d at 965 (quoting Espinoza v. Farah Manufacturing Co., Inc., 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973)).
 
 
 15
 Plaintiff has moved for the allowance of an attorney's fee for the services rendered by her counsel on this appeal. Having duly considered the matter, we conclude that $1,500.00 is a reasonable sum for such services. That sum is allowed as part of the costs. 42 U.S.C. § 2000e--5(k).
 
 
 16
 The judgment is affirmed.
 
 
 
 *
 The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Two distinct 'maternity leave' policies were involved
 The first, which remained in effect well into plaintiff's sixth month of pregnancy, provided that a pregnant permanent certificated employee such as plaintiff take a mandatory leave of absence commencing at the start of the seventh month of pregnancy, and contained no allowance for compensation during the term of such leave.
 The second, a so-called 'interim maternity leave policy,' was adopted during plaintiff's sixth month of pregnancy, and, as revised during her ninth month of pregnancy, provided as follows:
 'Maternity leave shall begin at least 30 days before the expected date of delivery unless the Assistant Superintendent of Personnel determines a different beginning date, as follows:
 'A. The Assistant Superintendent may determine a beginning date for an employee's maternity leave earlier or later than 30 days before the expected date of delivery, taking into account the available medical information, the employee's job performance, and the interests and requirements of the district, its schools, classes and pupils.
 'B. In any case in which he deems it advisable, the Assistant Superintendent may require a pregnant employee to obtain a medical report from a physician selected and paid by the District.
 'C. A request for continued employment at the convenience of the employee shall be made to the Assistant Superintendent at least one month prior to the date on which maternity leave would ordinarily begin. The request must be followed by a statement from the employee's physician current within two weeks of the ordinary leave date, including the following information.
 'a) The expected date of delivery, and the date to which the physician recommends continued employment.
 'b) A statement as to whether the pregnancy is unusual in any respect.
 'c) A statement as to the current health of the employee and the foetus.
 'd) A statement as to whether the employee is able to continue her employment to the given date without risk to the employee, the foetus or the District, given that the employment may include the following factors:
 'Maintaining control and direction of approximately 30 active students.
 'Staying with a class for periods of not less than one hour without interruption.
 'Undergoing jostling and bumping incident to the movement of students on school premises.
 'Supervising games and sports of students.
 'Coping with student fights, accidents and illnesses.
 'Driving to and from work.
 'D. If an employee disagrees with the determination of the Assistant Superintendent she may appeal in writing to the District Superintendent stating her reasons for such disagreement.'
 
 
 [2]
 The Commission's notification to a charging party under 42 U.S.C. 2000e--5(f)(1) that no conciliation agreement has been entered with the party charged is often referred to as a 'right to sue letter (or notice).' See, e.g., Black Musicians of Pittsburgh v. Local 60--471, American Federation of Musicians, 375 F.Supp. 902 (W.D.Pa.1974)
 
 
 [3]
 The judgment of the district court was, in pertinent part, as follows:
 'It Is Therefore Ordered, Adjudged and Decreed that:
 '(1) plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied;
 '(2) plaintiff's motion for class action certification is granted in part and denied in part; plaintiff is designated as the representative of all female permanent certified employees of the defendant district who will be discriminated against on account of sex by the district's policies regarding maternity leave and accrued sick pay benefits to pregnant employees, and she may prosecute this action on behalf of that class;
 '(3) defendants, their agents, and successors are permanently enjoined from denying plaintiff such accumulated sick leave compensation as she is entitled to receive for the period during which she was physically incapacitated and medically unable to work because of the effects of her pregnancy and delivery;
 '(4) defendants, their agents, and successors are permanently enjoined from adopting or enforcing policies or practices, formal or informal, involving such matters as commencement and duration of leave, reinstatement, and payment under any health or temporary disability insurance or sick leave plan which apply to disability due to pregnancy or childbirth on different terms and conditions than they apply to other temporary disabilities;
 '(5) plaintiff's attorney shall be paid reasonable attorney's fees by defendants in the amount of $3,675.00; (and)
 '(6) costs shall be awarded to plaintiff against defendants in accordance with plaintiff's memorandum of costs filed in accordance with Rule 124(e) of the Local Rules of this Court.'
 
 
 [4]
 While the existence of the district court's § 1343(3) jurisdiction over the school district and board may be questionable in light of the Supreme Court's subsequent decision in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), such jurisdiction was clearly present over defendant Snodgrass, the district superintendent
 
 
 [5]
 The substantiality of the § 1983 equal protection claim may have been rendered doubtful by the Supreme Court's decision in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), and our decision in Hutchison v. Lake Oswego School District No. 7, 519 F.2d 961 (9th Cir. 1975). But both of those decisions were rendered well after the entry of final judgment in the instant case
 Similarly, Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and Turner v. Dept. of Employment Security, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), both of which have bearing on plaintiff's due process claim but neither of which clearly dispose of it, were decided well after final judgment here.
 
 
 [6]
 As noted in Culpepper, supra, 421 F.2d at 894--895, the existence of irreparable injury may in appropriate circumstances be presumed, for purposes of preliminary injunctive relief, from the district court's preliminary determination that Title VII has been violated
 
 
 [7]
 Section 2000e--2 provides in part:
 '(a) It shall be an unlawful employment practice for an employer--
 '(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .; or
 '(2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex.'
 
 
 [8]
 As Hutchison makes clear, the prohibitions of Title VII may extend beyond the reach of the Equal Protection Clause. See also Satty v. Nashville Gas Company, 522 F.2d 850, 855, No. 75--1083 (6th Cir. 1975); Gilbert v. General Electric Company, 519 F.2d 6618 665--667, No. 74--1557 (4th Cir. 1975). But see United States v. Chesterfield County School District, 484 F.2d 70, 73 (4th Cir. 1973)
 
 
 [9]
 In 'Footnote 20' of Geduldig the Court stated in part:
 'While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification . . .. Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.
 'The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups--pregnant women and non-pregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes.'
 
 
 [10]
 The guideline, 29 C.F.R. § 1604.10(b), provides:
 'Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.'