Carole DOERR, Plaintiff,

v.

**B. F. GOODRICH COMPANY,**
**Defendant.**

**Civ. A. No. C79–1728.**

United States District Court,
N. D. Ohio, E. D.

Oct. 31, 1979.

Charles E. Guerrier, Barbara Kaye Besser, Cleveland, Ohio, for plaintiff.

Norman S. Carr, Roetzel & Andress, Akron, Ohio, for defendant.

MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is an employment discrimination action instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by the plaintiff, Carole Doerr, against her employer, B. F. Goodrich Company ("Goodrich"). Plaintiff, a thirty year old female, charges that Goodrich has engaged in unlawful sex-based discrimination through its adoption and implementation of a policy whereby female employees of child bearing ability are precluded from employ-

ment in certain work environments entailing exposure to the chemical vinyl chloride. Plaintiff currently moves the Court for preliminary injunctive relief enjoining the defendant from enforcing the above-described policy and directing that plaintiff be reinstated to the position she formerly occupied prior to the policy's execution. A hearing on the plaintiff's motion was conducted on October 5, 1979, wherein the Court extended oral argument on the underlying jurisdictional question, discussed *infra,* and received evidence going to the merits of the requested relief.

A review of the instant record discloses the following chronology. On March 12, 1973, plaintiff was hired by the defendant and assigned the entry-level position of bagger at Goodrich's Avon Lake facility. Plaintiff was subsequently promoted to the status of First Class Charge Operator ("Charge Operator") on August 16, 1976, and assigned to the vinyl chloride polymerization area of the Avon Lake facility. There, plaintiff was regularly exposed in the normal course of her duties to vinyl chloride in both a liquid and gaseous form.

On August 22, 1979, however, plaintiff was relieved of her duties as a Charge Operator and transferred to her former entry-level position of bagger. Plaintiff was informed that this reassignment was effectuated pursuant to defendant's newly devised policy whereby the utilization of female employees of child bearing capacity in the facility's vinyl chloride polymerization areas was prohibited. It appears this policy was predicated upon the opinions and findings of defendant's medical personnel that exposure to vinyl chloride represents a potentially significant health hazard to the unborn children of female employees.

In accordance with the aforesaid policy, Goodrich placed plaintiff on medical restriction by correspondence dated August 23, 1979. *See* PTX 2. Under the terms of this restriction, plaintiff was foreclosed from seeking positions in the vinyl chloride polymerization areas of the Avon Lake plant. However, plaintiff's ability to pursue advancements and/or transfers consistent with the terms of her restriction remained unimpaired. Moreover, the restriction expressly provided that plaintiff's rate of compensation as a Charge Operator would be "maintained indefinitely pending possible revision of current policies presently being considered". *Id.* Testimony elicited at the October 5th hearing indicated that plaintiff would remain entitled to the salary and benefits afforded Charge Operators for a minimum of one year.

Following plaintiff's transfer to her former entry-level position of bagger, plaintiff initiated proceedings with the Equal Employment Opportunity Commission (EEOC), filing charges of sex-based discrimination on September 6, 1979. One day later, plaintiff, without complying with the normal jurisdictional prerequisites to suit under Title VII, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 92 S.Ct. 1011, 39 L.Ed.2d 147 (1974), instituted the within action, filing her Complaint as well as the aforementioned motion for a preliminary injunction. Although plaintiff has failed to secure the requisite right-to-sue letter from the EEOC, she nonetheless urges the Court to assume jurisdiction over the instant action for the limited purpose of issuing the above-described injunctive relief. Plaintiff suggests thereafter that the Court hold further proceedings in abeyance pending exhaustion of plaintiff's administrative remedy with the EEOC. Defendant Goodrich has responded in opposition, challenging both the assertion of jurisdiction herein and the propriety of granting the desired preliminary relief.

The propriety of asserting jurisdiction prior to the exhaustion of EEOC remedies for the limited purpose of granting temporary injunctive relief is a question which has divided the authorities. The leading case in support of the exercise of federal jurisdiction is the Fifth Circuit Court of Appeals' decision in *Drew v. Liberty Mutual Insurance Co.,* 480 F.2d 69 (5th Cir. 1973), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974), wherein the Court of

Appeals indicated that in limited instances where irreparable harm and a likelihood of ultimate success on the merits are adequately demonstrated, an aggrieved employee may properly initiate suit "to maintain the status quo pending the action of the Commission on the basic charge of discrimination." *Id.* at 72. The Fifth Circuit has reaffirmed the principles of *Drew* in the subsequent cases of *Parks v. Dunlop*, 517 F.2d 785 (5th Cir. 1975) and *Garza v. Texas Educational Foundation, Inc.*, 565 F.2d 909 (5th Cir. 1978). Moreover, the Ninth Circuit Court of Appeals has approved the *Drew* rationale, holding in *Berg v. Richmond Unified School District*, 528 F.2d 1208, 1211 (9th Cir. 1975), *vacated on other grounds*, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977):

> In a limited class of cases such as this one, in which there exists both a high probability of the claimant's ultimate success on the merits and the threat of irreparable injury of the sort which the Act seeks to avoid, a Title VII claimant may personally bring suit to maintain the status quo pending disposition by the EEOC of the underlying charge of discrimination.

As suggested above, however, the view of the Fifth and Ninth Circuits has not been uniformly embraced. Numerous federal authorities have questioned the rationale of *Drew*, finding the exercise of jurisdiction absent compliance with the established jurisdictional prerequisites contrary to the congressional scheme mandating initial administrative efforts at conciliation and voluntary settlement. *See Troy v. Shell Oil Co.*, 378 F.Supp. 1042 (E.D.Mich.1974), *appeal dismissed as moot*, 519 F.2d 403 (6th Cir. 1975); *Nottelson v. A. O. Smith Corp.*, 397 F.Supp. 928 (E.D.Wis.1975); *Collins v. Southwestern Bell Telephone Co.*, 376 F.Supp. 979 (E.D.Okl.1974); *Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz.1975). Moreover, the First and Seventh Circuits, while reserving determination on the question, have similarly observed that the assertion of federal jurisdiction pursuant to the rationale of *Drew* may not comport with the congressional intent underlying the enactment of Title VII. *Hochstadt v. Worcester Foundation For Experimental Biology*, 545 F.2d 222, 226 (1st Cir. 1976); *Berg v. LaCrosse Cooler Co.*, 548 F.2d 211, 212 (7th Cir. 1977).

More importantly, however, the Sixth Circuit Court of Appeals' decision in *Jerome v. Viviano Food Company, Inc.*, 489 F.2d 965 (6th Cir. 1974) casts serious doubts on the viability of the *Drew* rationale in this jurisdiction. In *Jerome, supra*, the Sixth Circuit, finding that appellant had not satisfied the prerequisites to instituting suit under Title VII, affirmed the district court's decision denying a temporary injunction and dismissing the complaint, holding the *Drew* case distinguishable on its facts. While the Court of Appeals in *Jerome* did not explicitly reject the *Drew* rationale, the court in dicta appeared to manifest its disapproval thereof, admonishing the appellant for "seeking by case law decision to obviate the statutorily required cooling off and conciliation period set forth in the Equal Employment Opportunity Act." *Jerome, supra* at 966.

Accordingly, the Court of Appeals' opinion in *Jerome* has, contrary to the decision in *Drew*, been interpreted by one circuit court as precluding the issuance of preliminary relief "until the procedures set down in Title VII have been followed." *Berg v. LaCrosse Cooler Co., supra* at 212 n. 1. The district court in *Troy v. Shell Oil Co., supra*, has construed *Jerome* in a similar fashion, explaining:

> It was this obvious extension of Title VII by judicial action that apparently prompted the Sixth Circuit Court of Appeals, in *Jerome v. Viviano Food Co.*, 489 F.2d 965, 966 (6th Cir. 1974), to criticize the appellant there, who was "seeking by case law decision [*i. e. Drew*, upon which the appellant relied heavily] to obviate the statutorily required cooling off and conciliation period set forth in the Equal Employment Opportunity Act". After citing *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 and *Goodman v. City Products Corp.*, 425 F.2d 702 (6th Cir.), *supra*, for the proposition that ex-

haustion of administrative remedies is a precondition to suit under Title VII, the court was content to distinguish *Drew* on the facts, holding that *Jerome* had not demonstrated irreparable harm and therefore an injunction was not available, even if the court had jurisdiction to issue one (an issue on which the court expressed no clear opinion). Nonetheless, the court's wariness of the judicial activism demonstrated by the *Drew* court is clear and, in my opinion, convincing on the issue of how far its lead will be followed in this circuit.

*Troy v. Shell Oil Co., supra* at 1047.

■ In view of existing legal precedent in this Circuit, as well as the persuasive force of those arguments advanced in opposition to the exercise of federal jurisdiction in the instant circumstances,[1] this Court is constrained to conclude that it is without jurisdiction to issue the preliminary relief herein requested. The Court would observe further, however, that even assuming its jurisdiction was properly invoked, the instant record, viewed in its entirety, fails to support the issuance of the injunctive relief herein sought.

In assessing then the merits of plaintiff's motion for preliminary injunctive relief, the Court observes that under the criteria enumerated by the Sixth Circuit Court of Appeals in *Mason County Medical Assn. v. Knebel,* 563 F.2d 256, 261 (6th Cir. 1977), four factors are appropriately considered:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Accord: Ekanem v. Health & Hospital Corp. of Marion County,* 589 F.2d 316, 319 (7th Cir. 1978); *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975); *Dendy v. Washington Hospital Center,* 189 U.S.App.D.C. 212, 214, 581 F.2d 990, 992 (D.C.Cir.1978); *Buchanan v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir. 1975). In order to be entitled to relief, however, the plaintiff must sustain "the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favored the granting of the injunction". *Garlock, Inc. v. United Seal Incorporated,* 404 F.2d 256, 257 (6th Cir. 1968). *See Oburn v. Shapp, supra* at 147. In addition, the moving party "must demonstrate a substantial likelihood of success on the merits when the case is tried." *Blaylock v. Cheker Oil Co.,* 547 F.2d 962, 965 (6th Cir. 1976). *See Cincinnati Electronics Corp. v. Klepps,* 509 F.2d 1080 (6th Cir. 1975); *Garlock, supra* at 257; *Dendy v. Washington Hospital Center, supra* 189 U.S.App.D.C. at 214, 581 F.2d at 992.

Applying the foregoing criteria, the Court finds initially that plaintiff has not discharged her "burden of establishing a clear case of irreparable injury". *Garlock, supra.* A review of the instant motion suggests that plaintiff predicates the existence of irreparable injury primarily on the denial of job experience allegedly occasioned by her removal from the position of Charge Operator. Plaintiff asserts this loss of experience will impair her "opportunities for future career development." Plaintiff's Motion For Preliminary Injunction, p. 6. Plaintiff charges additionally that by virtue of the aforesaid medical restriction, she has been foreclosed from utilizing "her seniority rights to their fullest extent since numerous

1. The arguments advanced both for and against the assertion of jurisdiction absent compliance with the prerequisites to suit under Title VII have been thoroughly canvassed elsewhere and require no elaboration herein. In addition to the above-cited authorities, *see Eldredge v. Carpenters 46 Northern California Counties*

*Joint Apprenticeship And Training Committee,* 440 F.Supp. 506, 516 17 (N.D.Cal.1977); *Hochstadt v. Worcester Foundation For Experimental Biology,* 425 F.Supp. 318 (D.Mass.), *aff'd on other grounds,* 545 F.2d 222 (1st Cir. 1976).

job classifications at the Avon Lake facility have been closed to female workers." Complaint ¶ 32.

In passing on these contentions, the Court observes initially that the evidence adduced at the hearing of this matter failed to substantiate plaintiff's contention that the work experience lost as a consequence of plaintiff's reassignment will necessarily hinder her future career development. Indeed, on the basis of the present record, the impairment of plaintiff's career opportunities appears to be no more than a remote or speculative possibility. It is clear that under existing legal precedent, injury of such an uncertain nature is insufficient to justify the issuance of the relief herein sought. *See generally A.L.K. Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761 (3d Cir. 1971); *Taylor v. Gilmartin*, 434 F.Supp. 909, 911 n. 1 (W.D.Okl.1977); 11 Wright and Miller, *Federal Practice and Procedure,* § 2948 (1973).

More importantly, however, it appears to the Court that any impairment of plaintiff's seniority rights currently occasioned by the policy here in issue may be adequately redressed under the broad remedial powers afforded the federal courts under Title VII of the 1964 Civil Rights Act. As explained by the Supreme Court in *Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747, 764–67, 96 S.Ct. 1251, 1264–65, 47 L.Ed.2d 444 (1976):

Last Term's *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), consistently with the congressional plan, held that one of the central purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.*, at 418, 95 S.Ct., at 2372, 45 L.Ed.2d, at 297. To effectuate this "make whole" objective, Congress in § 706(g) vested broad equitable discretion in the federal courts to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court

deems appropriate." The legislative history supporting the 1972 amendments of § 706(g) of Title VII affirms the breadth of this discretion. "The provisions of [§ 706(g)] are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible . . . [T]he Act is intended to make the victims of unlawful employment discrimination whole, and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." Section-by-Section Analysis of H.R. 1746, accompanying the Equal Employment Opportunity Act of 1972—Conference Report, 118 Cong.Rec. 7166, 7168 (1972). This is emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole insofar as possible the victims of racial discrimination in hiring. Adequate relief may be well be denied in the absence of a seniority remedy slotting the victim in that position in the seniority system that would have been his had he been hired at the time of his application. It can hardly be questioned that ordinarily such relief will be necessary to achieve the "make-whole" purposes of the Act. (footnotes omitted).

*See also International Brotherhood of Teamsters v. U. S.*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

In view of the fact plaintiff may subsequently avail of the seniority relief afforded under Title VII, it is extremely doubtful that the injuries currently alleged constitute irreparable harm within the meaning of the applicable authorities. *See Parks v. Dunlop, supra; Jerome v. Viviano Food Company, Inc., supra.* As the Supreme Court reiterated in *Sampson v. Murray*, 415 U.S. 61, 91, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), *quoting Virginia Petroleum Jobbers Assn. v. Federal Power Commission*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (D.C.Cir.1958):

The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

The Court would observe lastly that plaintiff's situation herein differs markedly from those typically prevailing in employment discrimination suits where the courts have found the requirement of irreparable harm satisfied. In the instant action, for example, no discriminatory discharge of the plaintiff has been effectuated, nor is one threatened. *Compare, Drew, supra; Hochstadt, supra,* 425 F.Supp. 318; *Berg v. Richmond Unified School District, supra.* To the contrary, plaintiff remains in the employ of defendant Goodrich, commanding for at least a year's duration the wage rate and fringe benefits typically afforded Charge Operators notwithstanding her current assignment in a less senior position. Moreover, it would appear that plaintiff's present status as an entry-level bagger may prove temporary in nature, as plaintiff remains free to solicit other positions not inconsistent with the provisions of her medical restriction, *see* PTX 2, and may avail of possible revisions in the policy here in question as defendant's medical and scientific personnel examine in greater detail the potential health hazard presented.

■ In view of the circumstances attendant to plaintiff's current employment status, as well as the availability of subsequent compensatory and other corrective relief, the Court, in accordance with the foregoing authorities, is constrained to conclude that plaintiff has not demonstrated a clear case of irreparable injury sufficient to warrant the issuance of preliminary injunctive relief.[2]

While the absence of demonstrated irreparable harm appears of itself a sufficient basis for the denial of preliminary injunctive relief, *see Garlock, Inc., supra; Oburn v. Shapp, supra* at 150–51; *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978); *see generally* 11 Wright and Miller, *Federal Practice and Procedure* § 2948 (1973), consideration of the remaining factors identified above also militate against issuance of the relief herein sought. It is apparent, for example, that should this Court order plaintiff restored to her former position in the vinyl chloride polymerization area, the efforts of the defendant to enforce the policy herein challenged in an entirely consistent and uniform manner will be jeopardized. It is the considered judgment of defendant Goodrich that an inconsistent application of its policy will ultimately damage the company, *see* DFX A at ¶ 2, and the Court, viewing the record in its entirety, finds no basis for discrediting this conclusion.[3]

**2.** The Court is not persuaded by plaintiff's argument that in the instant context, "irreparable injury should be presumed from the very fact that the statute has been violated." *United States v. Hayes International Corp.,* 415 F.2d 1038, 1045 (5th Cir. 1969). *See Murry v. American Standard, Inc.,* 488 F.2d 529 (5th Cir. 1973). In support of this proposition, plaintiff relies entirely on case law emanating from the Fifth Circuit which is, of course, not binding on this Court and is in any event, clearly distinguishable. Unlike the instant action, for example, the Fifth Circuit cases permitting the element of irreparable harm to be presumed have all involved instances where the plaintiff had fully satisfied the normal jurisdictional prerequisites to suit. To extend this presumption of irreparable injury to Title VII actions where, as here, exhaustion of EEOC procedures has not been undertaken, would appear to further sanction the bypassing of favored administrative remedies. Moreover, neither *Drew supra,* nor its progeny, both of which purport to create only a limited and narrow exception to the exhaustion requirement, counsel that proof of actual irreparable harm may be properly dispensed with when seeking temporary injunctive relief.

**3.** There is also the possibility that defendant will be subjected to future liability in the event plaintiff, or any other female employee subsequently exempted from Goodrich's policy, conceives and gives birth to a child damaged as a result of exposure to vinyl chloride during the mother's pregnancy. The evidence disclosed in this regard that plaintiff, while contemplating sterilization, is currently a fertile female of thirty years of age. It should be observed further

The Court observes lastly that in view of evidence adduced it is doubtful whether plaintiff has discharged her burden of demonstrating "a strong or substantial likelihood or probability of success on the merits." *Mason County Medical Assn., supra* at 261. While the Court, in view of its earlier dispositions, will forego extended analysis on this question, it suffices to say that the validity of the policy here in question would appear to depend in large part on medical and scientific questions whose resolution must await further examination and study.[4] Given the inconclusiveness of the medical evidence adduced herein, and the importance of the same in properly assessing the legality of defendant's current policy, the Court cannot conclude that plaintiff has demonstrated the requisite substantial likelihood of success on the merits.

Accordingly, the Court is constrained to conclude that, even assuming its jurisdiction is properly invoked, an assumption the prevailing authorities in this Circuit fail to support, plaintiff has not established under the foregoing criteria entitlement to the injunctive relief she seeks.

In accordance with the foregoing, plaintiff's motion for preliminary injunction is hereby denied and the instant Complaint is hereby dismissed without prejudice to its reinstatement upon compliance with the established prerequisites to suit under Title VII.

IT IS SO ORDERED.

---

that Goodrich contends that it cannot adequately protect itself against the imposition of such liability in view of existing legal precedent which casts grave doubts on the ability of parents to effectively waive the rights of their unborn children. *See* DFX A at ¶ 4.

4. Briefly stated, and risking oversimplification, the relevance of medical testimony to the central question of whether the instant policy is violative of Title VII may be summarized thusly. It would appear defendant's policy is currently addressed solely to the risk of "transplacental carcinogenesis", which is the development of a cancer in the fetus resulting from the exposure of the mother during pregnancy to, in this instance, the chemical vinyl chloride. *See* DFX B. To eliminate this particular risk, it is apparent that only female employees need to be shielded from potentially harmful exposure. Plaintiff has asserted, in effect, however, that the failure of defendant's policy to recognize and accommodate the risk of male "mutagenesis" (*i. e.* changes in the male germinal cells occasioned by harmful exposure which may result in physical damage to the ensuing offspring) constitutes unlawful sex-based discrimination since male employees are permitted to remain in positions entailing exposure to vinyl chloride despite the fact the fetus of a woman impregnated by a male so exposed may also be adversely affected thereby. The comparative risks of transplacental carcinogenesis on the one hand and male mutagenesis on the other resulting from exposure to vinyl chloride at the current permissible levels are not well-established as the medical evidence to date appears largely inconclusive. To the extent it can be subsequently demonstrated that the risk of fetal damage associated with transplacental carcinogenesis is substantially greater than that associated with male mutagenesis, it might appear that defendant's policy is grounded upon a legitimate, nondiscriminatory factor.