**Charles E. WAGNER, Appellant**

v.

**Reese H. TAYLOR, Jr., Chairman, Interstate Commerce Commission.**

**No. 82–1009.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1982.

Decided Dec. 24, 1987.

Julian Karpoff, Arlington, Va., for appellant.

John W. Polk, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Patricia J. Kenney, Asst. U.S. Attys., and Craig M.

---

Keats, I.C.C., Washington, D.C., were on the brief, for appellee. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before WALD, Chief Judge, ROBINSON and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This is the first of three appeals by Charles E. Wagner, a black employee of the Interstate Commerce Commission (ICC), from adverse rulings by the District Court in his ongoing effort to demonstrate that the agency practices unlawful employment discrimination.[1] In the case before us, Wagner protests the rejection of his bid for an injunction to prohibit ICC from retaliating against him while his claim remains in litigation. The District Court entertained Wagner's injunctive action, but ultimately dismissed it without prejudice on

the ground that "the facts fail to require ... intervention at this time.[2] We hold that the court properly assumed jurisdiction of Wagner's suit, and affirm the order denying injunctive relief.[3]

## I. BACKGROUND

Wagner is employed as an attorney in ICC's Office of Compliance and Consumer Assistance. In 1981, he initiated an administrative class proceeding under Title VII of the Civil Rights Act of 1964,[4] as amended by the Equal Employment Opportunity Act of 1972,[5] alleging a pattern of racial discrimination at ICC[6] and seeking to be named class representative.[7] Shortly thereafter, Wagner lodged a series of charges that ICC had taken retaliatory actions against him for asserting the discrimination claim. The administrative process, however, produced no findings of retaliation.[8] To obtain administrative review, Wagner had invoked a then-existing but now-discarded expedited procedure established by the Equal Employment Opportunity Commission (EEOC) for handling retal-

1. We also decide today Wagner's second appeal, from the District Court's denial of his motions for a preliminary injunction and for class certification, *Wagner v. Taylor* (*Wagner II*), 836 F.2d 578 (D.C.Cir.1987), and his third appeal, from a dismissal of his suit seeking a declaratory order and an injunction against repetition of reprisals alleged in *Wagner I* and *Wagner II*. *Wagner v. Taylor* (*Wagner III*), 836 F.2d 596 (D.C.Cir.).

2. *Wagner v. Taylor* (*Wagner I*), Civ. No. 81–2695 (D.D.C. Dec. 23, 1981) (memorandum and order), at 3, Record on Appeal (R.) 9.

3. In addition, we grant Wagner's motion to supplement the record with a copy of the reprisal complaint he filed against ICC on December 14, 1981. Motion of Appellant to Supplement Record, *Wagner v. Taylor* (*Wagner I*), No. 82–1009 (D.C.Cir.) (filed Sept. 16, 1982).

4. Pub.L. No. 88–352, tit. VII, 78 Stat. 253 (1964) (codified as amended at 42 U.S.C. §§ 2000e–2000e–17 (1982)).

5. Pub.L. No. 92–261, 86 Stat. 103 (1972).

6. Wagner averred that ICC had "fail[ed] to hire and promote black professionals and technical employees," Complaint, at 1, *Wagner v. ICC*, EEOC No. 033–082–X2038A (filed Oct. 7, 1981) at 1, Appendix for Appellant (A.App.) E–1, and

that ICC, "through its agents, ha[d] engaged in a pattern and practice of conduct, which ha[d] subjected [Wagner] to racial discrimination in the terms and conditions of employment and ha[d] prevented [Wagner] from fully exercising the powers and discharging the responsibilities of his position of employment." *Id.* at 2, A.App. E–2.

7. After the District Court denied injunctive relief in the case before us, the Equal Employment Opportunity Commission (EEOC) recommended that ICC reject Wagner's class complaint. Finding some of the charges untimely, and ruling that Wagner had failed to meet the commonality and typicality prerequisites for class proceedings, EEOC concluded that his charges should be processed as an individual complaint. *Wagner v. ICC*, EEOC No. 033–082–X2038A (Baltimore Dist.Off. Jan. 18, 1982), Appendix for Appellee (Ae.App.) 3–8. ICC then dismissed the complaint, whereupon Wagner brought another action in the District Court alleging discrimination against himself and other black employees at ICC. See *Wagner v. Taylor* (*Wagner II*), Civ. No. 82–0444 (D.D.C. Nov. 9, 1982). The appeal from the denial of a preliminary injunction in that case is decided today in *Wagner v. Taylor* (*Wagner II*), *supra* note 1.

8. See notes 17–26 infra and accompanying text.

iation charges.[9] Had Wagner chosen the slower route of submitting his reprisal allegations as individual complaints of discrimination,[10] he would have been entitled to immediate judicial review of the agency's final determination.[11] The expedited process, however, seemingly prevented courts from directly reviewing administrative findings of no retaliation,[12] contemplating instead judicial examination of reprisal questions in conjunction with review of the original claim.[13] Although Wagner argues that this court has jurisdiction to address the agency's findings of no retaliation,[14] his counsel conceded before the District Court that he was "not asking for judicial review" of those findings, but instead was seeking an injunction against further reprisals.[15] Given this stance at the trial level, we limit our consideration to the propriety of injunctive relief against future retaliation.[16]

In all, Wagner asserted five claims of reprisal, four by the time the District Court denied his request for relief. The first attacked a performance rating that classified Wagner's job activity as only "minimally satisfactory" in two categories.[17] The agency, after examining this challenge, concluded that no reprisal had been intended,[18] but nonetheless, during the course of its regular performance-appraisal process, reclassified Wagner's performance as "fully satisfactory." ICC based this upgrade on a finding by the agency's Performance Review Board that the narrative appraisal of Wagner's work did not support the low rating.[19] Wagner's second claim was that his supervisor delayed processing of Wagner's challenge to his performance rating for five days because it was styled an "appeal" rather than a "review."[20] Wagner also asserted that he had been improperly reprimanded in the conduct of his

9. See 29 C.F.R. § 1613.262(a)-(b) (1981).

10. See *id.* § 1613.262(a).

11. See *id.* ("the allegation [will be] reviewed as an individual complaint of discrimination subject to §§ 1613.211 through 1613.222 ..."); *id.* § 1613.282 ("[a]n agency shall notify an employee or applicant of his right to file a civil action, ... in any final action on a complaint under §§ 1613.215, 1613.217, 1613.220, or § 1613.221").

12. See *Porter v. Adams,* 639 F.2d 273, 276–277 (5th Cir.1981) (use of expedited process for reprisal charge does not provide route to judicial review; claimant dissatisfied with results of expedited procedure may still file EEO complaint that could ultimately culminate in civil action); *Goza v. Bolger,* 538 F.Supp. 1012, 1016 (N.D.Ga. 1982), *aff'd without opinion,* 741 F.2d 1383 (11th Cir.1984) (*Porter's* holding denying judicial review applies when the only claims before trial court are those contained in reprisal charge); see also 48 Fed.Reg. 19,707–19,708 (1983) (amending 29 C.F.R. § 1613.262 (1982));

The current procedures are designed to circumvent the regular complaint procedures and provide a rapid charge process for complaints of reprisal discrimination. In exchange for the rapid charge process, the complainant waives all procedural due process safeguards provided by the regular complaint process, including the right to file a civil action in federal court.

13. See 29 C.F.R. § 1613.26(b)(2) (1981). EEOC has amended these regulations to eliminate the expedited review process altogether, and now permits claimants to elect to have reprisal allegations reviewed as separate complaints, which are subject to judicial review, or to have such allegations consolidated with the underlying complaint. See *id.* § 1613.262 (1986); see also 48 Fed.Reg. 19,707–19,708 (1983).

14. See Brief for Appellant at 24–25.

15. Transcript of Proceedings before District Court (Tr.) at 11, A.App. A–3.

16. See J. Moore & J. Lucas, 5A Moore's Federal Practice ¶ 46.02 (1985). The District Court specifically found that "[e]arlier instances of alleged retaliation were all resolved in favor of the plaintiff administratively and are not subject to this Court's review." *Wagner v. Taylor* (*Wagner I*), *supra* note 2, at 2.

17. See ICC Memorandum, Charge of Discrimination and Reprisal for Filing EEO Complaint (Oct. 8, 1981), A.App. F [hereinafter Charge of Discrimination and Reprisal].

18. See Letter from Office of the General Counsel, ICC (Nov. 13, 1981), A.App. Q.

19. See ICC Memorandum, Review of Performance Rating—Charles E. Wagner (Nov. 10, 1981), A.App. I.

20. See ICC Memorandum, Charge of Continuing Discrimination and Reprisal for Filing EEO Complaint (Oct. 29, 1981), A.App.P. [hereinafter Charge of Continuing Discrimination]. Wagner resubmitted the request as a "review" and processing continued. See Brief for Appellant at 6.

duties. That reprimand, however, was withdrawn the following day upon receipt of Wagner's reply.[21]

Wagner's third reprisal claim emanated from concurrent suggestions by ICC officials, in November of 1981, that he transfer to a different department of the agency and that the pending discrimination charges be dropped.[22] Wagner rejected both proposals and brought suit in the District Court to enjoin ICC from retaliation.[23] A month later, Wagner received a formal transfer order from the chairman of ICC stating that Wagner would be given "a new role at the Commission, as previously discussed, so that [he] will be able to work in an environment that is unrelated to [his complaint."[24] Wagner then amended his complaint in the pending lawsuit[25] and filed another administrative complaint[26]—his fourth reprisal claim. In Wagner's amended complaint, he requested the District Court to issue an order:

(1) Permanently enjoining, preventing and restraining Defendant and his agents from engaging in any acts of retaliation or harassment against Plaintiff;

(2) Permanently enjoining, preventing and restraining Defendant and his agents from reassigning or transferring Plaintiff without approval of the Court;

(3) Permanently enjoining, preventing and restraining Defendant and his agents from restricting Plaintiff in his authority to perform his duties in accordance with the description of duties and powers of his position;

(4) Granting Plaintiff reasonable attorney's fees and costs in this action; and

(5) Granting Plaintiff such relief as necessary to insure a work environment free of discrimination and harassment.[27]

The District Court consolidated consideration of Wagner's request for a temporary restraining order and a preliminary injunction barring his transfer with the hearing on the merits.[28] Immediately prior to the hearing, however, ICC rescinded the transfer order.[29] The agency then moved to dismiss for lack of subject-matter jurisdiction, asserting that Wagner had failed to exhaust his administrative remedies.

The District Court held that it had power to issue an injunction if the facts of the case warranted that relief. "Under exceptional circumstances," the court declared, "a Federal Court has jurisdiction to intervene to protect the integrity of Title VII administrative proceedings which may ultimately be brought before the Court for de novo review."[30] The court nonetheless dismissed Wagner's action without prejudice, concluding that, on the facts presented, no ground for an injunction existed.[31]

Since a court should be loath to intervene into ongoing federal executive personnel matters and since there is no clear indication that plaintiff has experienced reprisal in the past or that he will experience any interference with the progress of his complaint in the future .... the facts fail to require ... intervention at this time.[32]

---

21. See Tr. at 8, A.App. A–2.

22. ICC Memorandum, Reprisal Charge Against Chairman Reese H. Taylor, Jr. (Dec. 9, 1981) at 1, 3, A.App. S–1, S–3 [hereinafter Reprisal Charge Against Chairman Taylor].

23. See Complaint, *Wagner v. Taylor* (*Wagner I*), Civ. No. 81–2695 (D.D.C.) (filed Nov. 9, 1981), R. 1.

24. ICC Memorandum, EEO Claims (Dec. 3, 1981), A.App. W.

25. See Amended Complaint, *Wagner v. Taylor* (*Wagner I*), Civ. No. 81–2695 (D.D.C.) (filed Dec. 8, 1981), A.App. C.

26. ICC Memorandum, Complaint for Pattern and Practice of Reprisal by Agency Regarding EEO Complaint (Dec. 14, 1981), [hereinafter Complaint for Pattern and Practice of Reprisal]. See Motion of Appellant to Supplement Record, *supra* note 3.

27. Amended Complaint, *supra* note 25, at 6–7, A.App. C–6–7.

28. See *Wagner v. Taylor* (*Wagner I*), *supra* note 2, at 1.

29. See *id.* at 2.

30. *Id.* at 1.

31. *Id.* at 2.

32. *Id.* at 2–3.

On appeal, Wagner argues that the District Court abused its discretion by denying relief. We hold that federal district courts are authorized to afford interim injunctive relief against retaliatory transfers and other acts of reprisal while the administrative and judicial processes are ongoing. We further hold, given the facts of the case, that the District Court did not abuse its discretion by refusing to grant the injunction Wagner sought.

## II. AUTHORITY OF THE DISTRICT COURT TO GRANT INJUNCTIVE RELIEF

ICC charges error in the District Court's denial of its motion to dismiss for lack of subject-matter jurisdiction, arguing that Wagner was required to exhaust his administrative remedies before seeking injunctive relief from the alleged reprisals.[33] The question whether interim injunctive relief is available to federal employees seeking to prevent acts of retaliation is one of first impression in this court.[34] Upon consideration of the language and history of Title VII, and informed by the courts' traditionally broad equitable power to fashion preliminary relief, we conclude that the District Court was correct in assuming jurisdiction.[35]

During oral argument, Wagner's counsel made clear that the interim injunction sought would remain in force until completion of both the administrative and judicial-review processes. We cast aside any notion that the District Court, prior to conclusion of administrative proceedings, could properly have indefinitely or permanently enjoined ICC from engaging in retaliation. To hold otherwise is to sanction a circumvention of the administrative procedures carefully erected by Congress in Ti-

---

**33.** See Brief for Appellee at 13–15. ICC also contends that, because Wagner's transfer was rescinded and could be reinstated only after fifteen days' notice, and because Wagner's request to proceed on a class basis was denied, thereby completing the administrative process, the case is now moot. *Id.* at 11–13. An action for injunction does not become moot, however, simply because the conduct complained of is no longer continuing. See *Allee v. Medrano,* 416 U.S. 802, 810, 94 S.Ct. 2191, 2198, 40 L.Ed.2d 566, 577 (1974). It is well established that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642, 649 (1979) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953)). Thus, the agency's unilateral rescission of Wagner's transfer on the day of the District Court's hearing is not alone ground enough for dismissal on the basis of mootness.

Rather, a case will be mooted by subsequent developments only when "it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur ... and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *County of Los Angeles v. Davis, supra,* 440 U.S. at 631, 99 S.Ct. at 1383, 59 L.Ed.2d at 649 (citations omitted); see *Save Our Cumberland Mountains, Inc. v. Clark,* 233 U.S. App.D.C. 316, 325–326, 725 F.2d 1422, 1431–1432 (1984); *Douglas v. Donovan,* 227 U.S.App. D.C. 147, 150, 704 F.2d 1276, 1279 (1983); *Loe-*

*terman v. Town of Brookline,* 709 F.2d 116, 118 (1st Cir.1983), and ICC has not met this standard. Wagner's obvious objective was freedom from reprisal while he pursued, judicially as well as administratively, relief from alleged acts of discrimination, and progression of his case from the administrative level to the District Court therefore did not eliminate the underlying controversy. Accordingly, we reject ICC's contention.

**34.** The Supreme Court has held that Title VII complainants must exhaust administrative remedies before seeking judicial review, see, *e.g., Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 157 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668, 675–676 (1973); see also *Porter v. Adams, supra* note 12, 639 F.2d at 276, but it has never decided whether interim injunctive relief from retaliation is available to litigants during the course of administrative proceedings.

**35.** See *Wagner v. Taylor (Wagner I), supra* note 2, at 1 (citing *Parks v. Dunlop,* 517 F.2d 785 (5th Cir.1975)). ICC had argued that Wagner was not entitled to injunctive relief because he had filed expedited reprisal charges from which judicial review did not lie. See 29 C.F.R. § 1613.262(b) (1981). The District Court noted that even if ICC's contention were correct, Wagner was nonetheless able to proceed "at least with respect to the allegedly retaliatory decision to reassign him," which was not processed on an expedited basis. See *Wagner v. Taylor (Wagner I), supra* note 2, at 1–2.

tle VII.[36] Any decision to impose a long-term injunction must be postponed until a district court, following final agency action, has obtained jurisdiction to review the case on the merits.[37] But we agree with the District Court that federal courts have authority to enjoin, when appropriate, retaliatory transfers and other acts of reprisal while the administrative or the judicial-review process is advancing.

The Supreme Court has recognized " 'a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels.... Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action....' " [38] If the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review.[39] And, of course, if the court has already assumed jurisdiction following completion of the administrative proceeding, its authority to do so is all the more evident.

If the courts are to be divested of that inherent equitable power to maintain the status quo by temporarily enjoining retaliation against a Title VII claimant, there must be clear evidence of a congressional intent to do so.[40] In cases involving private-sector employees, some courts have found such evidence in the section of Title VII [41] that expressly authorizes EEOC and the Attorney General to seek interim injunctive relief against employers allegedly in violation, but which does not expressly empower claimants to do so.[42] The theory is that by giving EEOC and the Attorney General the explicit right to proceed for temporary relief, Congress intended that

**36.** *Cf. Brown v. General Servs. Admin.,* 425 U.S. 820, 833, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402, 411 (1976) (section of Title VII relating to federal employees, "with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible").

**37.** In this case, the administrative process has concluded, and the District Court has dismissed Wagner's claims of retaliation. *Wagner v. Taylor (Wagner III),* Civ. No. 84–1509 (D.D.C. Nov. 29, 1984). The appeal from that dismissal is decided today in *Wagner v. Taylor (Wagner III),* supra note 1.

**38.** *FTC v. Dean Foods Co.,* 384 U.S. 597, 604, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802, 807 (1966) (quoting *Arrow Transp. v. Southern Ry.,* 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52, 60 n. 22 (1963)); see *Sheehan v. Purolator Courier Corp.,* 676 F.2d 877, 884 (2d Cir.1981); cf. *Potomac Elec. Power Co. v. ICC,* 226 U.S.App.D.C. 289, 295–296, 702 F.2d 1026, 1032–1033 (1983) (authority under All Writs Act, 28 U.S.C. § 1651(a) (1982), to issue writ of mandamus to preserve future jurisdiction).

**39.** See *Sheehan v. Purolator Courier Corp., supra* note 38, 676 F.2d at 884.

**40.** See *FTC v. Dean Foods Co., supra* note 38, 384 U.S. at 608, 86 S.Ct. at 1744–1745, 16 L.Ed.2d at 809 (noting that a federal court with prospective jurisdiction may issue a preliminary injunction "[i]n the absence of an explicit direction from Congress").

**41.** Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 4(a), 86 Stat. 104 (codified at 42 U.S.C. § 2000e–5(f)(2) (1982)). This section provides:

> Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge.

**42.** See, e.g., *Collins v. Southwestern Bell Tel. Co.,* 376 F.Supp. 979, 983 (E.D.Okl.1974) (only EEOC, not claimant, may seek preliminary injunction); see also *Doerr v. B.F. Goodrich Co.,* 484 F.Supp. 320, 323 (N.D.Ohio 1979) (no jurisdiction to grant interim relief to private sector employee); *Nottelson v. A.O. Smith Corp.,* 397 F.Supp. 928, 930–932 (E.D.Wis.1975) (same); *Gradillas v. Hughes Aircraft Co.,* 407 F.Supp. 865, 869 (D.Ariz.1975) (same); *Troy v. Shell Oil Co.,* 378 F.Supp. 1042, 1047 (E.D.Mich.1974), *appeal dismissed as moot,* 519 F.2d 403 (6th Cir.1975) (same). In *Doerr v. B.F. Goodrich Co., supra,* although the court felt constrained by precedent to hold that no jurisdiction existed, it nevertheless determined that the granting of a preliminary injunction was not warranted on the merits. See 484 F.Supp. at 323–326.

procedure to be the exclusive means by which an individual could be protected from irreparable harm. Under this construction, if neither EEOC nor the Attorney General applies for an injunction, none would be available to claimants threatened with transfers, firing, or harassment. Other courts, however, have disagreed, and have held that the absence of express statutory authorization does not preclude a court from exercising its traditional power to afford protection to claimants facing irreparable harm while they are pursuing their administrative remedies.[43] Taking Title VII as a whole, and considering the legislative history of the 1972 amendments [44] and the broad statutory powers designed to effectuate and preserve the rights of Title VII claimants, we conclude that Congress did not intend to foreclose federal courts from providing injunctive relief in favor of worthy claimants, whether employed federally or nonfederally.

From its inception in 1964, Title VII has expressly conferred a private right of action by which an individual could pursue a remedy for its violation.[45] EEOC was not given authority to seek judicial relief on its own. Both Title VII and its legislative history are silent as to the individual claimant's ability to obtain temporary injunctive

relief against reprisals. As we indicated earlier, however, without an express contrary indication from Congress, federal courts have inherent equitable power to issue such injunctions to preserve the status quo.[46] Thus, under the 1964 legislation, a private suit for a temporary injunction for this purpose was proper.[47]

We may construe the 1972 Amendments to eliminate the availability of such relief to claimants only if we can discern an intent by Congress to do so. The language of the section,[48] however, does not itself support that interpretation. It seems clear that Congress, in that section, merely spelled out the full range of newly-created enforcement methods available to EEOC, thereby leaving no doubt as to that agency's ability to seek injunctive relief in the courts—a remedy already available to private litigants by virtue of the historic power of federal courts to afford it.[49] Congress likely felt that without explicit language authorizing EEOC to request injunctions in appropriate cases, needless litigation on that score was invited. But the delineation of authority granted to EEOC does not, in the face of congressional silence as to claimants, provide a sufficient basis for an inference that Congress meant to circumscribe the claimant's ability to seek interim injunc-

**43.** *Sheehan v. Purolator Courier Corp.,* supra note 38, 676 F.2d at 887 (court has jurisdiction to grant interim relief to individual private-sector plaintiff); *Parks v. Dunlop,* supra note 35, 517 F.2d at 787 (court has jurisdiction to provide interim relief for federal employees); *Berg v. Richmond Unified School Dist.,* 528 F.2d 1208, 1211 (9th Cir.1975), *vacated on other grounds,* 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977) (aggrieved employee may initiate suit to maintain status quo pending EEOC's disposition of underlying discrimination charge); *Drew v. Liberty Mutual Ins. Co.,* 480 F.2d 69, 72 (5th Cir. 1973), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974) (same). Several courts have not addressed the jurisdictional question directly but, assuming the existence of jurisdiction, have denied relief for failure to meet the traditional prerequisites for an injunction. See, e.g., *Hochstadt v. Worcester Found. for Experimental Biology,* 545 F.2d 222, 226 (1st Cir.1976); *Jerome v. Viviano Food Co.,* 489 F.2d 965, 966 (6th Cir.1974).

**44.** Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (codified as amended primarily at 42 U.S.C. § 2000e (1982)).

**45.** 42 U.S.C. § 2000e–5(e) (1982). Federal employees were not, however, covered by Title VII until passage of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (codified as amended primarily at 42 U.S.C. § 2000e (1982)).

**46.** See notes 38–39 supra and accompanying text.

**47.** See *Sheehan v. Purolator Courier Corp.,* supra note 38, 676 F.2d at 883–884; *McCarthy v. Cortland County Community Action Program, Inc.,* 487 F.Supp. 333, 338 (N.D.N.Y.1980); Richards, *Preliminary Relief in Employment Discrimination Cases,* 66 Ky.L.J. 39, 59–60 (1977).

**48.** See note 41 supra.

**49.** See *McCarthy v. Cortland County Community Action Program, Inc.,* supra note 47, 487 F.Supp. at 338.

tive relief from retaliatory acts.[50] As the court stated in *McCarthy v. Cortland County Community Action Program, Inc.,*[51]

> [i]t is ... difficult to appreciate how a congressional effort to define the scope of the Commission's newly enacted powers could fairly be construed as an implied repeal of remedies which had theretofore been available to private litigants, particularly since repeals by implication are not favored and will not be assumed absent a clear manifestation of legislative intent.[52]

Moreover, nothing in the legislative history of Title VII evinces a congressional purpose to preclude a claimant from seeking interim injunctive relief. But the section-by-section analysis approved by the Conference Committee does stress the con-

gressional perception of the importance of such relief to claimants faced with retaliation:

> The importance of preliminary relief in actions involving violations of Title VII is central to ensuring that persons aggrieved under this title are adequately protected and that provisions of this Act are being followed. Where violations become apparent and prompt judicial action is necessary to insure these provisions, the Commission or the Attorney General, as the case may be, should not hesitate to invoke the provisions of this subsection.[53]

The need to ensure the integrity and effectiveness of Title VII proceedings becomes particularly compelling when claimants experience reprisals for asserting their

---

50. Congress was well aware in 1972 that EEOC was faced with a massive workload. The House Committee on Education and Labor reported:

> In recent years regulatory agencies have been submerged with increasing workloads which strain their resources to the breaking point. The Commission has stated, in testimony before this committee, that its caseload has increased even more rapidly than its projections had anticipated. The result of this increasing use of many of the Federal regulatory agencies has frequently affected those agencies' abilities to remain current on all of the matters for which they are responsible. This has led to lengthy delays in the administrative process and has frequently frustrated the remedial role of the agency. In the case of the Commission, the burgeoning workload, accompanied by insufficient funds and a shortage of staff, has, in many instances, forced a party to wait 2 to 3 years before final conciliation procedures can be instituted. This situation leads the committee to believe that the private right of action, both under the present Act and in the bill, provides the aggrieved party a means by which he may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process.

H.R.Rep. No. 238, 92d Cong., 1st Sess. 12 (1972), *reprinted in* [1972] U.S.Code Cong. & Admin. News 2137, 2147–2148. In light of the "administrative quagmire" recognized by Congress, it is not difficult to anticipate that a claimant might not be able to obtain Commission action on an urgent reprisal matter in time to protect against irreparable harm. For example, in *Hochstadt v. Worcester Found. for Experimental Biology, supra* note 43, although the complainant requested EEOC to pursue a preliminary injunction, the Boston district director informed her that it

would be unable to make a timely application therefor because of the large backlog of cases in the Boston office. 545 F.2d at 225 n. 1.

51. *Supra* note 47.

52. 487 F.Supp. at 338 (citing *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351, 355 (1936)).

53. Section-by-Section Analysis of H.R. 1746, The Equal Employment Opportunity Act of 1972, 118 Cong.Rec. 7168 (1972) (discussing § 706(f)(2)'s authorization of EEOC actions for interim injunctive relief). Similarly, the Senate Committee on Labor and Public Welfare, in discussing a cognate provision in the Senate bill introduced to amend the 1964 Act, stated:

> [I]n those cases where the need for preliminary relief is serious—including but in no way limited to situations where aggrieved persons are transferred, fired, or otherwise harassed for bringing other charges before the Commission—the Commission is expected to act swiftly in issuing a complaint so that the person aggrieved will not be harmed by a delay between the time his charge is filed and the issuance of the complaint by the Commission.
>
> It is the committee's view that this authority be broadly construed with the view toward completely rooting out and eliminating employment discrimination. The Commission is to take whatever affirmative steps are needed to provide a full and complete remedy to the aggrieved party or class and to obtain a full and immediate compliance with the Civil Rights Act of 1964.

S.Rep. No. 415, 92d Cong., 1st Sess. 21–22 (1971).

rights. Retaliation threatens the very core of Title VII's guarantees, for it may well dissuade employees from ventilating their grievances.

The indispensable role of interim injunctive relief in achieving the goals of Title VII has been aptly described in a decision by the Second Circuit holding such relief available to a claimant against a nonfederal employer:

> [W]e think it plain that for the court to renounce its incidental equity jurisdiction to stay such employer retaliation pending the EEOC's consideration would frustrate Congress's purposes. Unimpeded retaliation during the now-lengthy (180–day) conciliation period is likely to diminish the EEOC's ability to achieve conciliation. It is likely to have a chilling effect [54] on the complainant's fellow employees who might otherwise desire to assert their equal rights, or to protest the employer's discriminatory acts, or to cooperate with the investigation of a discrimination charge. And in many cases the effect on the complainant of several months without work or working in humiliating or otherwise intolerable circumstances will constitute harm that cannot adequately be remedied by a later award of damages.[55]

EEOC has supported the availability of interim injunctive relief to employees and has, in the past, filed amicus curiae briefs advocating that position.[56] Moreover, EEOC regulations explicitly state that "[n]othing in th[e] section [prescribing the procedure by which EEOC may seek such relief] shall be construed to prohibit private individuals from exercising their rights to seek temporary or preliminary relief on their own motion." [57] EEOC added this provision in 1977 to underscore its view that private interim relief constituted an "independent right already recognized by the case law." [58]

We reject ICC's thesis that awards of interim injunctive relief in appropriate cases would "short circuit [ ] the rigorous exhaustion requirements and time limits thereby undercutting the crucial administrative role Congress gave to the agencies and the EEOC." [59] Maintenance of the status quo to prevent irreparable injury differs radically from the sort of circumvention and disruption decried by the exhaustion doctrine.[60] EEOC, the agency charged with broad implementation of Title VII, has expressed the view that courts should be free to exercise this traditional equitable power at the call of an individual claimant when necessary. There is no clear indication in the statutory text or the legislative history that the will of Congress was otherwise.

Having concluded that private-sector employees are entitled to seek interim injunctive relief to maintain the status quo, we are bound by precedent to hold that federal employees enjoy the same right. Congress [61] and numerous federal courts [62]

---

**54.** This "chilling effect" may not necessarily be of a magnitude or nature sufficient to implicate the First Amendment. See note 76 *infra*.

**55.** *Sheehan v. Purolator Courier Corp., supra* note 38, 676 F.2d at 885–886.

**56.** See, e.g., *Hochstadt v. Worcester Found. for Experimental Biology, supra* note 43, 545 F.2d at 226.

**57.** 29 C.F.R. § 1601.23(c) (1986).

**58.** Amendments to EEOC Procedural Regulations, 42 Fed.Reg. 47,828, 47,831 (1977).

**59.** Brief for Appellee at 14.

**60.** See *Wallace v. Lynn,* 165 U.S.App.D.C. 363, 367 & nn. 16–18, 507 F.2d 1186, 1190 & nn.

16–18 (1974) (policies underlying exhaustion doctrine include provision of opportunities to administrative tribunals to correct their own errors, protection of established schemes of decisionmaking from being undermined by circumvention of administrative procedures, reduction of waste of judicial resources, and discouragement of forum shopping); see also *Andrade v. Lauer,* 234 U.S.App.D.C. 384, 393, 729 F.2d 1475, 1484 (1984).

**61.** The House Report accompanying the 1972 amendments, which brought federal employees within the ambit of Title VII, declared that "there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector." H.R.Rep. No. 238, *supra* note 50, at 23, *reprinted in* [1972] U.S.Code Cong. & Admin. News 2137, 2158.

**62.** See note 62 on page 575.

have declared that the provisions granting federal employees protection under Title VII confer upon them the same rights and remedies as are available to their nonfederal counterparts.[63]

The overarching purpose of the 1972 amendments was to achieve the goal of effectively eradicating employment discrimination.[64] Nothing in the language or legislative history of Title VII leads us to conclude that Congress intended to divest the federal courts of their ancient equitable power to fashion interim injunctive relief. We hold that the District Court has jurisdiction to grant such relief to federal Title VII claimants when the prerequisites for equitable intervention are met.[65]

## III. AVAILABILITY OF INTERIM INJUNCTIVE RELIEF

■ To determine whether an injunction is appropriate, the District Court should balance (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable injury to the plaintiff in the absence of an injunction, (3) the possibility of substantial harm to other interested parties from a grant of injunctive relief, and (4) the interests of the public.[66] District

**62.** See, e.g., *Chandler v. Roudebush,* 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416, 420 (1976) (quoting S.Rep. No. 415, 92d Cong., 1st Sess. 16 (1971)) (federal employees have right to trial de novo in Title VII proceedings because, *inter alia,* "[a] principal goal of the amending legislation ... was to ... accord[ ] ... '[a]ggrieved [federal] employees or applicants ... the full rights available in the courts as are granted to individuals in the private sector under Title VII' "); *Bundy v. Jackson,* 205 U.S.App.D.C. 444, 452, 641 F.2d 934, 942 (1981) ("Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers"); *Douglas v. Hampton,* 168 U.S.App.D.C. 62, 67, 512 F.2d 976, 981 (1975) ("Congress clearly intended to give public employees the same substantive rights and remedies that had previously been provided for employees in the private sector"); *Parks v. Dunlop, supra* note 35, 517 F.2d at 787 ("[t]he intent of Congress in enacting the 1972 amendments to that Act extending its coverage to federal employment was to give those public employees the same rights as private employees enjoy").

**63.** ICC nonetheless contends that Congress' omission of a provision referable specifically to federal employees analogous to § 2000e-5(f)(2) manifests an intent to bar federal workers from seeking interim injunctive relief. See Brief for Appellee at 14. Section 2000e-16, which pertains exclusively to federal employees, incorporates the private-sector provisions of §§ 2000e-5(f) through (k) "as applicable." 42 U.S.C. § 2000e-16(d). Arguably, § 2000e-5(f)(2) is not literally applicable because under the federal scheme EEOC does not have general responsibility for investigating the complaints of federal employees; rather, initial administrative review is conducted by the employing agency itself— the same entity alleged to be the discriminator. See *Chandler v. Roudebush, supra* note 62, 425 U.S. at 847, 96 S.Ct. at 1953, 48 L.Ed.2d at 423 (holding that federal employees, like their nonfederal counterparts, are entitled to a trial de novo, and stating that similarly § 2000e-5(f)(2) could not apply to federal employees "without

modification"); *Parks v. Brennan,* 389 F.Supp. 790, 793 (N.D.Ga.1974), *rev'd on other grounds,* 517 F.2d 785 (5th Cir.1975); see also *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 389–390, 520 F.2d 108, 121–122 (1975) (according federal employees right to trial de novo). As the court reasoned in *Parks v. Brennan, supra,* because the agency cannot seek an interim injunction against itself, that task must fall to the individual federal claimant, 389 F.Supp. at 793; otherwise, federal employees will be denied an important right enjoyed by private-sector employees. As indicated, Congress intended Title VII to achieve substantial parity between federal and nonfederal workers, and we must interpret the statutory language to effectuate that intent.

**64.** H.R.Rep. No. 238, *supra* note 50, at 1–2, *reprinted in* [1972] U.S.Code Cong. & Admin.News 2137–2138.

**65.** See notes 66–69 *infra* and accompanying text.

**66.** See *Foundation of Economic Trends v. Heckler,* 244 U.S.App.D.C. 122, 130, 756 F.2d 143, 151 (1985); *WMATC v. Holiday Tours,* 182 U.S.App. D.C. 220, 221–222, 559 F.2d 841, 842–843 (1977). ICC argues, on the basis of *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), that in order to avoid unwarranted judicial intervention into federal personnel matters, interim injunctive relief should be available to Title VII claimants only in extraordinary circumstances. See Brief for Appellee at 15–17. *Sampson* involved a claim for injunctive relief in a suit brought under the Civil Service Act, the legislative history and regulatory framework of which posit a very different relationship between administrative agencies and the courts than that comprehended by the Equal Employment Opportunity Act of 1972. Since, however, we hold that Wagner did not meet the usual standards, see notes 70–76, *infra* and accompanying text, we need not address the question whether a higher standard is required in such instances.

courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief.[67] We have held that "[u]nless appellant carries the heavy burden of demonstrating an abuse of discretion" in denying an injunction, "the order must be affirmed."[68] The District Court's conclusion that the "facts fail to require ... intervention at this time"[69] is unassailable on that basis.

■ As the court observed, Wagner's intra-agency transfer was rescinded prior to the hearing on the motion for an injunction.[70] Because of Wagner's status in the Senior Executive Service, he cannot be transferred without fifteen days' notice.[71]

Most of his five complaints of reprisal had already gone through the expedited grievance process, and all are eventually subject to judicial review.[72] Although Wagner alleged that future retaliation was imminent, he offered no supporting evidence except copies of his formal complaints.[73] We agree with the District Court that Wagner presented "no clear indication that ... he will experience any interference with the progress of his complaint in the future."[74] He thus has not established either the irreparable injury essential to requests for equitable relief[75] or the imminence of further retaliation. We therefore affirm the dismissal of his claim for injunctive relief as a reasonable exercise of discretion.[76]

---

67. *National Ass'n of Greeting Card Publishers v. United States Postal Serv.,* 186 U.S.App.D.C. 331, 363, 569 F.2d 570, 602 (1976), *vacated in part on other grounds sub nom. United States Postal Serv. v. Associated Third Class Mail Users,* 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977).

68. *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 67, 186 U.S.App.D.C. at 363, 569 F.2d at 602; *see also United States v. W.T. Grant Co., supra,* note 33, 345 U.S. at 633–634, 73 S.Ct. at 898, 97 L.Ed. at 1309–1310. See generally 7 J. Moore, J. Lucas & K. Sinclair, Moore's Federal Practice, ¶¶ 65.-04[2], 65.21 (1985).

69. *Wagner v. Taylor (Wagner I), supra* note 2, at 1; see text *supra* accompanying notes 31–32.

70. *Wagner v. Taylor (Wagner I), supra* note 2, at 2.

71. *Id.*

72. *Id.;* see note 12 *supra* and accompanying text.

73. See Complaint, *supra* note 6, A.App.E; Charge of Discrimination and Reprisal, *supra* note 17, A.App.F; Charge of Continuing Discrimination, *supra* note 20, A.App.P; Amended Complaint, *supra* note 25, A.App.C; Reprisal Charge Against Chairman Taylor, *supra* note 22, A.App.S; Complaint for Pattern and Practice of Reprisal, *supra* note 26.

74. *Wagner v. Taylor (Wagner I), supra* note 2, at 2.

75. In *EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037 (6th Cir.1981), the Sixth Circuit concluded that EEOC could establish the irreparable injury essential to a grant of an interim injunction by showing that "its ability to prosecute the pending charge ha[d] been impeded by the alleged retaliation through the 'chilling' effect on other employees' willingness to cooperate in the investigation." *Id.* at 1043. To determine whether employees had indeed been "chilled," the court looked at the specific evidence before it. See *id.* at 1044. Wagner, however, has presented no evidence to demonstrate that potential class members have been chilled in the exercise of their Title VII rights. Moreover, because Wagner can pursue his case individually even if he is not joined by other employees, he apparently would suffer no harm even if others decline to step forward.

In *Segar v. Civiletti,* 516 F.Supp. 314, 320 (D.D.C.1981), the District Court found that the denial of a request for an injunction would have a chilling effect on class members, who might refrain from coming forth if a highly visible spokesperson were demoted and transferred after engaging in protected activity. The court concluded that the chilling effect constituted irreparable harm. *Id.* The same court had already presided over the trial of the plaintiff's discrimination claim, however, and found that the agency had been discriminating. See *Segar v. Civiletti,* 508 F.Supp. 690, 705–708, 714 (D.D. C.1981), *aff'd in part and vacated in part,* 238 U.S.App.D.C. 103, 738 F.2d 1249 (1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). The irreparability of harm was linked to the precarious nature of the plaintiff's case at this particular stage, *Segar v. Civiletti, supra,* 516 F.Supp. at 320, since fellow class members had to "come forward with proof of specific injuries" in order to ascertain the appropriate level of damages. *Id.* at 319–320 & n. 20. Wagner, however, is still in the process of challenging ICC's practices, and had not been named class representative at the time he sought injunctive relief.

76. Wagner insists that the First Amendment provides an independent basis for an injunction against retaliation by an agency. Brief for Appellant at 25–28. ICC, in contrast, contends that

## IV. ATTORNEYS' FEES

■ Wagner also seeks attorneys' fees under Title VII's provision authorizing awards therefor, in the court's discretion, when the aggrieved employee is "the prevailing party."[77] This provision applies to federal as well as nonfederal employees who bring employment discrimination actions.[78] Since, however, Wagner's bid for interim injunctive relief has been rejected both by the District Court originally and by this court on appeal, it is apparent that he cannot be considered "the prevailing party."

Wagner maintains that "[t]his court has repeatedly held that civil rights litigants whose prayers are mooted through reformatory action by the defendant, in response to the suit, are entitled to attorney fees."[79] The decisions cited for this proposition do not support such a broad statement. In *Grubbs v. Butz,*[80] we rejected a request for attorneys' fees by a Title VII claimant who was "substantially successful" in her interlocutory appeal,[81] because she had "yet to demonstrate discrimination."[82] In that case, we did not discuss the question of mootness attributed to voluntary agency action, but did recognize that an interim fee award might be appropriate if discrimination had been established or if the losing party had acted in bad faith.[83] Wagner has satisfied neither of these latter criteria.

In *Foster v. Boorstin,*[84] this court did find that a Title VII litigant was a "prevailing party" even though his request for promotion had been granted before the case went to judgment. We noted, however, that "neither the District Court nor

the Supreme Court's decision in *Brown v. General Servs. Admin., supra* note 36, precludes an injunction grounded directly on the First Amendment. Brief for Appellee at 20. *Brown* held that a federal employee could not bypass Title VII's administrative procedures by instituting a discrimination suit jointly invoking. Title VII and other remedial statutes. *Brown v. General Servs. Admin., supra* note 36, 425 U.S. at 835, 96 S.Ct. at 1969, 48 L.Ed.2d at 413. ICC's argument focuses on a general observation in the *Brown* opinion that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969, 48 L.Ed.2d at 413.

We ourselves have resorted to this broadly sweeping statement, and have held that federal employees cannot assert additional or alternative discrimination claims predicated directly upon the Constitution, but must use Title VII as the sole means of litigating their grievances. See *Kizas v. Webster,* 227 U.S.App.D.C. 327, 345, 707 F.2d 524, 542 (1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Lawrence v. Staats,* 214 U.S.App.D.C. 438, 441, 665 F.2d 1256, 1259 (1981); *Torre v. Barry,* 213 U.S.App.D.C. 147, 150, 661 F.2d 1371, 1374 (1981). Although these decisions might suggest that a First Amendment claim cannot be maintained concurrently with a charge of reprisal pitched on Title VII, we need not resolve this question of constitutional doctrine here, see *Ashwander v. TVA,* 297 U.S. 288, 345–347, 56 S.Ct. 466, 482–483, 80 L.Ed. 688, 710–711 (1936) (concurring opinion); see also *Ralpho v. Bell,* 186 U.S.App.D.C. 368, 380, 569 F.2d 607, 619 (1977); *Colm v. Vance,* 186 U.S.App.D.C. 132, 139 n. 11, 567 F.2d 1125, 1132 n. 11 (1977), for even if such a First Amendment claim were viable, Wagner's presentation does not justify equitable relief. The Supreme Court has in-

structed that injunctive relief is not appropriate unless the party seeking it can demonstrate that "First Amendment interests [are] either threatened or in fact being impaired at the time relief [is] sought." *Elrod v. Burns,* 427 U.S. 347, 373–374, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547, 565–566 (1976). In our view, Wagner has shown neither the existence nor the imminence of a First Amendment violation. A litigant must do more than merely *allege* the violation of First Amendment rights; "in cases involving a claim by movant of interference with protected freedoms or other constitutional rights," the court has declared, "the finding of irreparable injury cannot be rested on a mere contention of a litigant, but depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment." *Delaware & Hudson Ry. v. United Transp. Union,* 146 U.S.App.D.C. 142, 158–159, 450 F.2d 603, 619–620, *cert. denied,* 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971).

77. 42 U.S.C. § 2000e–5(k) (1982).

78. *Id.* § 2000e–16(d); see also *Grubbs v. Butz,* 179 U.S.App.D.C. 18, 19, 548 F.2d 973, 974 (1976).

79. Brief for Appellant at 29.

80. *Supra* note 78.

81. 179 U.S.App.D.C. at 19, 548 F.2d at 974.

82. *Id.* at 21, 548 F.2d at 976.

83. *Id.* at 21–22, 548 F.2d at 976–977.

84. 182 U.S.App.D.C. 342, 561 F.2d 340 (1977).

the Government on appeal suggests that [the plaintiff] did not prevail in his claim that he had been discriminated against or in his quest for proper remedial relief." [85] Such an achievement certainly cannot be claimed here. The remaining cases Wagner cites [86] were suits under the Freedom of Information Act [87] and do not inform our decision here.

Moreover, in seeking relief, Wagner does not ask us merely to prevent his transfer. Instead, he seeks an injunction preventing any future retaliation against him,[88] which today we deny. The instant case, therefore, does not fall squarely within the attorneys'-fees doctrine as advanced by counsel.

Under more appropriate circumstances, the District Court could have exercised its jurisdiction to protect a Title VII claimant from irreparable harm during the course of the administrative process. We agree, however, that the record failed to justify intervention at the time Wagner sought it.

The judgment appealed from is accordingly

*Affirmed.*

---

85. *Id.* at 345, 561 F.2d at 343.

86. See Brief for Appellant at 29.

87. 5 U.S.C. § 552(a)(4)(E) (1982).

88. See text *supra* accompanying note 15.