Phong T. HUYNH and Vien U. Huynh,
individually and on behalf of others
similarly situated, Plaintiffs,

v.

Frank C. CARLUCCI, Secretary,
Department of Defense,
Defendant.

Civ. A. No. 87–3436.

United States District Court,
District of Columbia.

Feb. 11, 1988.

Kenneth Berlin, Winston, Stimson, Putnam & Roberts, Washington, D.C., for plaintiffs.

Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

### FINDINGS OF FACT

*Preliminary Matters*

1. Plaintiffs, two naturalized United States citizens of Vietnamese national origin employed by the Department of Defense ("DoD"), filed this action challenging the constitutionality of a provision (the "Regulation") of the new comprehensive DoD Personnel Security Program (the "Security Program") that denies security clearance to recently-naturalized citizens from 29 countries. 52 Fed.Reg. 11,227 (to be codified at 32 C.F.R. § 154, *et seq.*). On December 24, 1987, plaintiffs moved for a preliminary injunction against enforcement of the Regulation. A hearing on this motion was held before the Court on February 3, 1988.

2. Based on the undisputed facts described below, this Court grants plaintiffs' motion for a preliminary injunction against enforcement of the Regulation against the two named plaintiffs.

3. Plaintiffs' pending motions for class certification and to add a third named plaintiff will be decided after the defendant has had an opportunity to respond.

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 1331 of Title 28 of the United States Code. Venue is properly laid in the District of Columbia.

5. Plaintiffs are siblings currently employed at the DoD's Naval Surface Warfare Center ("NSWC") in Dahlgren, Virginia. NSWC is engaged in weapons research.

6. Plaintiff Phong Huynh is an electrical engineer in the Digital Systems Branch, Command Support Systems Division of the Electronic Systems Department. (12/23/87 Phong Huynh Aff. ¶ 7.)

7. Plaintiff Vien U. Huynh, a recent college graduate with a bachelor's degree in computer science, began her NSWC employment as a computer scientist in the Tactical Computer Systems Branch, Command Support Systems Division of the Electronics Systems Department at NSWC. (12/23 Vien Huynh Aff. ¶ 6.) On August 31, 1987, Ms. Huynh was assigned to NSWC's Public Works Department, where security clearance is not required for her to do computer-related work. (12/23/87 Vien Huynh Aff. ¶ 11.) Ms. Huynh began working in the Public Works Department on September 8, 1987. (12/23/87 Vien Huynh Aff. ¶ 11.)

8. The Huynhs are natives of South Vietnam who escaped communist rule there in 1978, immigrated to the United States in 1979 and became United States citizens in 1985. (12/23/87 Phong Huynh Aff. ¶¶ 2, 3, 4; 12/23/87 Vien Huynh Aff. ¶¶ 2, 3.)

9. Defendant Frank C. Carlucci is Secretary of Defense. As such, he is responsible for the continued enforcement of the Regulation being challenged by plaintiffs.

*The Regulation*

10. The Defense Department's new Personnel Security Program became effective as of January 2, 1987. Among other things, the Security Program created policies and procedures governing personnel "security clearance" for classified defense-related information.

11. The Security Program applies to "DoD civilian personnel, members of the Armed Forces, excluding the Coast Guard in peacetime, contractor personnel and other personnel who are affiliated with the Department of Defense...." 32 C.F.R. § 154.2(b).

12. Under the Security Program, security clearance is granted to a United States citizen if he or she satisfies a "personnel security standard" requiring that

based on all available information, the person's loyalty, reliability, and trustwor-

thiness are such that entrusting the person with classified information or assigning that person to sensitive duties is clearly consistent with the interests of national security. 32 C.F.R. § 154.6(b).

13. Under the new Security Program and its predecessor programs, persons affiliated with the Defense Department could receive one of three levels of clearance, which, in descending order of restrictiveness, are "TOP SECRET," "SECRET" and "CONFIDENTIAL." 32 C.F.R. § 154.16(b). Prior to receiving "final" security clearance, a DoD employee may for a period of time receive "interim" clearance.

14. Under the Regulation, however, certain naturalized United States citizens are denied security clearance even if they satisfy the aforementioned "personal security standards." The Regulation denies security clearance to naturalized citizens whose "country of origin has been determined to have interests adverse to the United States ... or who have resided in such countries [sic] for a significant period of their life." 32 C.F.R. § 154.16(c).

15. Pursuant to the Regulation, DoD has promulgated a list of 29 such countries or areas. 32 C.F.R. § 154, Appendix G. One of the nations on the list is plaintiffs' country of origin, South Vietnam.

16. Although the People's Republic of China does not appear on this list, defendant has admitted that DoD has been secretly applying the Regulation to naturalized United States citizens from that nation. (1/19/88 Donnelly Dec. ¶ 10.)

17. Naturalized citizens from one of the 29 explicitly-proscribed countries or areas and from the People's Republic of China are precluded from obtaining security clearance unless they have:

    (i) been a U.S. citizen for five years or longer, or

    (ii) if a citizen for less than five years, must have [sic] resided in the U.S. for the past 10 years.

32 C.F.R. § 154.16(c)(1).

18. A naturalized United States citizen who does not satisfy these criteria "may be considered for issuance of a limited access authorization ["LAA"] (as an exception to policy)" only if "a compelling need exists." 32 C.F.R. § 154.16(c)(3).

19. NSWC construes this LAA exception to apply only if an applicant is "unique" or has a "special expertise to DoN [Department of Navy] mission." Thus, NSWC believes "that it may be very difficult to obtain a security clearance based on compelling reasons for junior professionals ... and other professional appointments with minimum work experience." (1/29/88 Phong Huynh Aff., Exs. A & C.)

20. To obtain an LAA, a newly-naturalized citizen from one of the 30 proscribed nations must not only demonstrate such a "compelling need" but also must satisfy stringent security requirements, including being subjected to polygraph examinations. 32 C.F.R. § 154.16(d)(1)(iv). Even if a limited access authorization is obtained, these United States citizens will nevertheless not have access to TOP SECRET material, which is the highest security classification, or to any less classified information that is not releasable to a particular citizen's country of origin. 32 C.F.R. § 154.16(d).

*Injury to Plaintiffs*

21. Shortly after commencing work at NSWC in September 1985, Mr. Huynh underwent a background investigation and received interim security clearance at the SECRET level. Shortly thereafter, the Defense Department began to consider Mr. Huynh for "final" security clearance. As of the filing of this action, however, such clearance had not been granted Mr. Huynh.

22. On July 20, 1987, Ms. Huynh began work at NSWC and was assigned to the Tactical Computer Systems Branch, Command Support Systems Division, Electronic Systems Department, a unit involved in classified weapons research. (12/23/87 Vien Huynh Aff. ¶ 6.) That day a NSWC supervisor disclosed and described the Regulation to both plaintiffs. The Huynhs were told that, as a result of the Regula-

tion, Mr. Huynh might lose his job and Ms. Huynh might never obtain security clearance. Both plaintiffs were advised to search for new employment. (12/23/87 Vien Huynh Aff. ¶ 6; 12/23/87 Phong Huynh Aff. ¶ 7.)

23. On August 10, 1987, NSWC officials explained the Regulation to a number of Vietnamese–American employees, including plaintiffs. Plaintiffs and others were supplied with forms by which they could apply for an LAA exception to the Regulation. (12/23/87 Vien Huynh Aff. ¶ 8; 12/23/87 Phong Huynh Aff. ¶ 11.)

24. Shortly thereafter, both plaintiffs submitted their respective LAA applications. Despite having been informed that such applications would be processed in approximately six months' time, neither application had been ruled on prior to the filing of this action. (12/23/87 Vien Huynh Aff. ¶ 9; 12/23/87 Phong Huynh Aff. ¶ 12.)

25. After Mr. Huynh submitted his LAA application, a NSWC supervisor approached him on several occasions and suggested that Mr. Huynh seek employment in the private sector.

26. On September 8, 1987, Ms. Huynh was forced to transfer from Tactical Computer Systems Branch, where 90% of computer-related jobs require security clearance, to NSWC's Public Works Department, which performs non-classified maintenance, construction and other support work. This transfer occurred because, under the Regulation, Ms. Huynh was not eligible even for the "interim" security clearance typically granted NSWC employees during their first few weeks of work. (12/23/87 Vien Huynh Aff. ¶¶ 10, 11.)

27. Prior to filing this lawsuit, Ms. Huynh was denied any security clearance whatsoever and no ruling had been made on her application for an LAA exemption under the Regulation. (12/23/87 Vien Huynh Aff. ¶¶ 11, 12; 1/29/88 Vien Huynh Aff. ¶ 2.)

*Defendant's Efforts to Avoid Judicial Review of the Regulation*

28. Defendants have undertaken a number of actions concerning the granting of a final security clearance to Mr. Huynh which raise questions as to the reasons for his sudden security clearance being granted in the face of the lawsuit.

29. On January 7, 1988, after this action was filed, the DoD "authorized consideration of Ms. Vien U. Huynh for a secret Limited Access Authorization dependent upon completion of a favorable Background Investigation." (1/15/88 Bell Dec., Ex. A.) This LAA exception, however, is not authorized by either the Regulation or internal DoD (Navy) memoranda interpreting the Regulation. Despite the fact that Ms. Huynh, a recent college graduate with only a bachelor's degree, has no prior work experience in her field, the Defense Department concluded that it was "critical" that she be granted an exemption under the Regulation's "compelling need" standard. Defendant's justification for this conclusion is as follows:

> "If Ms. Huynh cannot be retained [i.e., if she is fired pursuant to the Regulation], efforts to fill the position must begin again, resulting in additional time and efforts expended in the recruitment process, as well as some probability that NSWC may have to settle for a person with less capability."

(1/15/88 Bell Dec., Ex. A.)

Defendant expects this background investigation to take approximately six months to complete. The Defense Department "*expect[s]*" to grant an LAA to Ms. Huynh "*[p]rovided* the investigation yields only minor, or no, derogatory information." (1/15/88 Bell Dec.) (emphasis supplied).

30. On January 15, 1988, after this action was filed, the Defense Department "determined that Mr. Huynh is eligible for a final security clearance." (1/15/88 Weaver Dec.) Mr. Huynh, however, has yet to be informed of this action. (1/29/88 Phong Huynh Aff. ¶ 2.) Defendant claims that Huynh will receive final "Secret" clearance because the Regulation "was not intended to be retroactively applied to employees [such as Mr. Huynh] for whom security clearance applications were pending" on the Regulation's effective date. (1/19/88 Donnelly Dec. ¶ 11.)

31. Internal DoD (Navy) memoranda, however, indicate that in order to be exempt from the Regulation, Mr. Huynh had to have been "granted a *final* security clearance prior to 1 March 1987." (1/29/88 Phong Huynh Aff., Ex. C) (emphasis supplied). If, as in Mr. Huynh's case, only interim clearance had been received when the Regulation became effective, written DoD (Navy) procedures subject that individual to the Regulation. (*Id.*)

*Defendant's Justification of the Regulation*

32. Defendant's position is that the Regulation is necessary because background information concerning naturalized citizens born in one of the designated countries cannot typically be obtained, and the information which can be obtained cannot be verified or corroborated as easily as information from other countries. Donnelly Declaration ¶ 8. Accurate information about an individual's background is necessary to make an informed judgment as to whether or not granting a security clearance to an individual is clearly consistent with the national interest. *Id.* ¶¶ 4–5, 8.

33. Defendant has failed to adduce sufficient evidence that the Defense Department's blanket denial of security clearance to all recently-naturalized citizens from 30 different countries is supported by a compelling state interest or has even a rational basis.

34. For decades prior to January 2, 1987, the Government accorded security clearance applications by newly-naturalized citizens the same individualized, case-by-case review given all other citizens. As the Defense Department report that resulted in the Regulation concedes, "there are relatively few cases where these policies are known to have led to penetrations of DoD by hostile agents." (1/19/88 Donnelly Dec., Ex. 2 at 30.) Indeed, despite testimony by the Defense Department's "counter-intelligence 'Chief' " that he was intimately familiar with "every case of espionage against the United States and its allies since 1966," he was able to identify only one spy in the past 22 years who would have been denied security clearance under the Regulation. (*Id.* ¶¶ 3(d) & 7.) During the last three years alone, however, there have been at least 23 incidents of spying by citizens who would not have been subject to the Regulation.

35. Defendant has not offered sufficient evidence justifying the Regulations' designation of nations with interests adverse to the United States, which at least ostensibly omits such obviously hostile nations as the People's Republic of China and Lebanon and does not account for allied nations that have recently spied on the United States.

36. Defendant has offered insufficient evidence that national security would be prejudiced if the Defense Department were required to accord newly naturalized citizens the same case-by-case security review given other security clearance applicants. Such an individualized review would not preclude defendant from considering such factors as an applicant's lack of verifiable background information, his vulnerability to coercion by his former country and his nation of origin's hostility to the United States.

37. Thus, it appears that, rather than promoting national security interests, the Regulation's only conceivable justification is that of mere convenience. The Defense Department, however, has offered no evidence that the Regulation is the product of economic or administrative necessities.

## CONCLUSIONS OF LAW

38. Plaintiffs seeking preliminary injunctive relief must establish: (1) their likelihood of success on the merits; (2) that they will suffer irreparable harm if interim relief is denied; (3) that the harm, if any, to other interested parties if interim relief is granted is insubstantial; and (4) that the public interest will be served by such interim relief. *Washington Metropolitan Transportation Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir.1958). Plaintiffs have satisfied each of these criteria.

### A. *Justiciability*

■ 39. Phong Huynh's claims are not moot. Although defendant indicates that he will accord Mr. Huynh "final" *Secret* security clearance because he had applied for such clearance prior to the Regulation's effective date, such a "grandfather clause" is found nowhere in the Regulation or even in internally published DoD (Navy) memoranda. Indeed, such internal writings as have been adduced reveal that defendant's policy to date has been to apply the Regulation to all persons who did not in fact possess final clearance as of the Regulation's effective date. Apparently, because of this policy, Mr. Huynh has been repeatedly threatened with dismissal and has had his promotion delayed.

40. The Defense Department's eleventh-hour about-face on this issue provides Mr. Huynh no assurance that the Regulation, which on its face applies to him and which in application has been applied to him in the past, will not in the future be applied to him. Thus, Mr. Huynh's claim is not moot. *See Los Angeles County v. David,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

41. Vien U. Huynh has suffered injury in fact and thus has standing to challenge the Regulation. Defendant promises that, in approximately six months, fully a year after her initial employment by NSWC, Ms. Huynh will be "consider[ed]" for an LAA "dependent upon the completion of a favorable Background Investigation." At present, however, Ms. Huynh continues to be systematically denied even the "interim" security clearance accorded to other citizens within weeks of their initial employment by NSWC.

■ 42. Even if Ms. Huynh were immediately accorded an LAA, however, she would still have standing to prosecute this action. Regardless of whether an LAA would adversely affect Ms. Huynh's "promotion potential," the fact is that even with such an exemption she would be subject to procedures and disabilities to which other U.S. citizens are not subjected.

43. The Regulation itself, the Defense Department study that resulted in the Regulation, and internal DoD (Navy) memoranda all demonstrate that the LAA exemption contemplated by defendant was not intended for employees such as Ms. Huynh. Ms. Huynh is justifiably concerned, therefore, that the Defense Department may in the future apply the Regulation to her.

44. The Regulation, moreover, stigmatizes plaintiffs and other recently-naturalized citizens with a badge of disloyalty.

### B. *Likelihood of Success on the Merits*

■ 45. The Regulation automatically denies security clearance to naturalized citizens on the basis of their national origin unless they have been United States citizens for 5 years or United States residents for the past 10 years. Therefore, but for their national origin, plaintiffs would be accorded the same individualized security clearance evaluation given all other United States citizens. Government action that classifies citizens on the grounds of national origin is inherently suspect, subject to strict scrutiny and thus can be sustained only if necessary to achieve a compelling state interest. *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971); *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944).

46. Discrimination on the basis of national origin is subject to strict scrutiny and can be sustained only if there is a close relationship between the classification and promotion of a compelling interest, the classification is necessary to achieve that interest, and the means or procedures employed are precisely tailored to serve that interest. *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982); *In re Griffiths,* 413 U.S. 717, 721–22, 93 S.Ct. 2851, 2854–55, 37 L.Ed.2d 910 (1973). Defendant has failed to offer sufficient evidence that the Regulation is necessary to achieve a compelling state interest. Before this Regulation was promulgated, all United States citizens were permitted to apply for security clearances and all received individualized consideration. Defendant has made no showing that the Defense Depart-

ment's recent change of policy is supported by any convincing empirical evidence or is a necessary or precisely-tailored procedure for preserving national security.

■ 47. Defendant contends, however, that the Regulation should be subject to a rational basis test rather than strict scrutiny because it discriminates against naturalized citizens on the basis of their national origin only for a specified period of time and thus discriminates against only some members of a suspect class. It is suggested that strict scrutiny is appropriate only in cases of "pure" national origin discrimination and not in cases such as this one where the Government discriminates against naturalized citizens only until they satisfy the chronological requirement set forth in the Regulation. This argument is without merit or authority. *See Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971) (statute denying benefits to aliens who have not resided in the United States for fifteen years held unconstitutional). Moreover, on the evidence adduced thus far, this Court is hard put to find even a rational basis for the Regulation. Defendant also notes that the Regulation applies to all naturalized citizens, regardless of their country of birth, who have resided for a significant period of time in one of the designated countries. 32 C.F.R. § 154.16(c)(1).

■ 48. For these reasons, plaintiffs have shown a substantial likelihood of success on the merits.

### C. *Irreparable Injury*

49. Plaintiffs have demonstrated that they have suffered and will continue to suffer irreparable injury as a result of defendant's enforcement of the Regulation against them.

50. The Regulation on its face and as applied clearly denies plaintiffs the same individualized security clearance review available to other citizens.

51. Since July 1987, defendant has repeatedly threatened to terminate plaintiffs' employment. Mr. Huynh's promotion was delayed. Ms. Huynh has been transferred from her original position to one not requiring security clearance.

52. Defendant has in practice applied the Regulation in an unpredictable manner. Plaintiffs therefore are justifiably concerned that, despite defendant's post-litigation assurances, the Regulation will be applied to them in the future.

53. Plaintiffs therefore suffer and will continue to suffer irreparable injury to their respective careers, their own sense of self-worth and well-being and of their constitutional right to the same treatment given other citizens. *See Wagner v. Taylor*, 836 F.2d 566 (D.C.Cir.1987); *Zepeda v. United States I.N.S.*, 753 F.2d 719 (9th Cir.1983).

### D. *Harm to Other Parties & Public Interest*

54. A preliminary injunction against enforcement of the Regulation will not harm any other parties. Defendant is only required to treat plaintiffs as he treats other citizens, just as was done before the Regulation was implemented. Defendant is not required to grant security clearance under circumstances that might compromise national security. Defendant is not inhibited from considering all factors deemed appropriate and necessary in the interest of national security. Individualized consideration of plaintiffs is all that is required.

55. The interim relief ordered here serves the public interest by ensuring protection of constitutional rights.

### CONCLUSION

For the foregoing reasons, it is this 11th day of February, 1988,

ORDERED that plaintiffs' motion for preliminary injunction shall be granted and defendant is enjoined from enforcing section 154.16(c) of the Department of Defense "Personnel Security Program" during the pendency of this suit; and it is

FURTHER ORDERED that defendant shall file and serve by hand with a copy to Chambers, Room 4435, its oppositions to plaintiffs' motion for class certification and amendment of their complaint by February

12, 1988. Plaintiffs shall reply and serve by hand with a copy to Chambers, by February 19, 1988; and it is

FURTHER ORDERED that if the parties desire discovery on the scope of the proposed class or the application of the regulation by the Department of Defense they shall submit a proposed joint expedited discovery plan by February 26, 1988. If the parties determine discovery is not necessary, the parties shall file cross-motions for summary judgment by March 15, 1988. Oppositions shall be filed by March 25, 1988.